Jerry S. ZOOK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 885S313.

Supreme Court of Indiana.

Oct. 14, 1987.

Patrick M. Schrems, Monroe County Public Defender, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant Jerry S. Zook was convicted of murder and arson following a fire at the Zeta Beta Tau fraternity house at Indiana University. In this direct appeal, defendant enumerates three issues:

1. whether defendant's pre-confession comment constituted a request for counsel prohibiting further interrogation,

2. whether defendant's confessions should have been suppressed due to an absence of probable cause for arrest,

3. sufficiency of evidence apart from the confessions.

We affirm the convictions.

The fire was first reported during the early morning hours on Sunday, October 21, 1984. Immediately following the fire, the Indiana University Police Department, the Monroe County Prosecutor, the Office of the Indiana State Fire Marshal, and the Bloomington Fire Department began an extensive investigation. Approximately 60 persons were interviewed in the course of the day. By late evening, the investigators' only suspect was defendant, a 23–year–old Indianapolis resident who had traveled to Bloomington to visit friends that weekend. Deputy State Fire Marshal Ron Taylor telephoned defendant at approximately 11:00 p.m. on Sunday, October 21, 1984, and requested defendant to talk with him yet that night. In response, defendant voluntarily traveled to Bloomington from his home in Indianapolis accompanied by his sister, her boyfriend, and her roommate. They arrived at the Indiana University Police Department at approximately midnight and were greeted by Taylor. Defendant then voluntarily accompanied Taylor to a police interview room while his sister and companions remained in a waiting area apart from the interview room. Present in the interview room with the defendant were Taylor and Chief Deputy Investigator James Skaggs of the State Fire Marshal's office. The interview was observed through a clearly visible television camera which made a videotape recording of the ensuing events.

At the commencement of the interview, the investigators provided and read a stan-

dard advisement of rights. Defendant was informed of his right to remain silent and told that if he decided to answer questions without a lawyer present he would "still have the right to stop answering at any time." At 12:25 a.m., defendant signed a written waiver of rights which provided:

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Thereafter, the investigators began to question the defendant regarding the events of the day. While thorough, the questioning was polite, considerate, and not aggressive. When the interview began to focus on defendant's presence at the fraternity house near the time of the fire, he asked, "Am I under arrest now?" Skaggs replied that he was not.

In further questioning Skaggs and Taylor expressed sympathy with defendant's difficulties the day before. They told him that it was "best to get it out," and "don't keep it bottled up inside you." Defendant then replied that "I don't want to go to prison." In response, Skaggs stated "it is hard to confront, isn't it?" Defendant repeated "I don't want to go to prison." Further questioning ensued in which defendant explained that his presence at the fraternity house was because he wanted to go back and get his wallet. Then the following colloquy occurred:

Taylor: Let's do this, Jerry. Let's start out—

Zook: I just—you know—I just ...

Taylor: O.K., take a deep breath, okay. It'll help us out a little bit. Take a deep breath.

Skaggs: We have been up all day too.

Taylor: Let's go back to the house. You are in your sweats. You are in your sweatshirt. Just start out. Go one step at a time, all right? Will you do that?

Zook: *Shouldn't I wait 'til I get a lawyer?*

Taylor: If you want help, and you want to get this thing off your back, what you need to do first of all is to get honest with yourself. Okay? Now we know, I know, Jim knows, we all know why it happened. In a lot of senses I don't blame you why. I have gotten pretty mad too. Okay? So you are not out there by yourself. If we didn't think Jerry was worth talking to and there was something there to salvage, we wouldn't put this kind of time into you.

(R. 739–740). Thereafter, little by little, the questioners persuaded defendant to talk about the events of the day up to the point of his entering the fraternity house and going to the basement. The following questioning then occurred:

Taylor: O.K., you are down in the basement. It is pretty warm. How long did you stay down there?

Zook: Five or ten minutes maybe.

Taylor: Did you get anything down there?

Zook: Can I ask a few questions first?

Taylor: Sure.

Zook: *I'm not under arrest, right?*

Skaggs: *You are not under arrest.*

Taylor: *You are not under arrest.*

Skaggs: We know what you got, Jerry. We dug that room out completely.

Zook: I got turpentine.

(R. 744). After this point in the interview, the defendant admitted pouring paint solvent on a couch inside the fraternity and lighting it with a match.

Upon completion of this initial interview, the investigators then conducted an audiotape recapitulation statement which lasted twelve minutes, and was preceded by another rights advisement. When the audiotape statement was finished, defendant asked, "Can you tell me what is going to happen?" Skaggs replied that "you will be arrested." Defendant was thereafter placed in custody. The entire interview and recapitulation statement consumed less than seventy minutes. Both the videotape

and the audiotape were received in evidence at trial.

Defendant unsuccessfully sought to suppress the confessions, and the trial court overruled defendant's timely objections to admission of the confessions into evidence. The objections claimed violation of the defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 13 and 14 of the Indiana Constitution. In this appeal, defendant does not argue that the Indiana Constitution requires recognition of procedural or substantive rights distinct from those protected under the United States Constitution.

Each of the issues presented in this appeal questions the admissibility of defendant's confessions. In reviewing a trial court's ruling upon the admissibility of a confession, we look to the evidence before the trial court which supports its ruling. *Dodson v. State* (1987), Ind., 502 N.E.2d 1333; *Coleman v. State* (1986), Ind., 490 N.E.2d 711; *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Dodson, supra.* The standard of appellate review of confession admissibility is the same as in other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's ruling. *Dillon v. State* (1983), Ind., 454 N.E.2d 845.

Defendant contends that his statement, "Shouldn't I wait 'til I get a lawyer?" constituted a request for counsel requiring further questioning to cease pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Analysis of this contention poses two subsidiary questions: 1) did defendant have a right to counsel during his questioning by fire investigators; and, if so, 2) was defendant's inquiry sufficient to invoke the right.

In both the Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution, ref-erence to the right to counsel is preceded by the phrase "in all criminal prosecutions." In *Miranda,* the United States Supreme Court deemed the right to counsel before judicial commencement of prosecution as important to "make the process of police interrogation conform to the dictates of the privilege [to remain silent]," and as necessary for the protection of an individual's rights at trial. 384 U.S. at 466, 86 S.Ct. at 1623, 16 L.Ed.2d at 719. However, *Miranda* and its progeny have ruled that the right to counsel, both under the Sixth Amendment and as an adjunct to the Fifth Amendment privilege against self-incrimination, accrues upon "custodial interrogation," which was explained to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.

The circumstances of defendant's interview are similar to those in *Oregon v. Mathiason* (1977), 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714, and *California v. Beheler* (1983), 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275. In *Mathiason,* police initiated contact with the defendant who agreed to come to the patrol office. Accompanying the officer in to a closed room, the defendant was told he was suspected of committing a burglary, but not under arrest. In the course of a half-hour interview, the defendant gave a taped confession. Determining that the absence of *Miranda* warnings did not require exclusion of the confession, the Supreme Court stated:

Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or be-

cause the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited. 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719. In a factual context found remarkably similar to that of *Mathiason,* the Supreme Court in *Beheler* also found a suspect's confessions did not occur during custodial interrogation.

In our prior decisions, we have also recognized that the requirements of *Miranda* do not apply beyond coercive custodial interrogation. *Hill v. State* (1984), Ind., 470 N.E.2d 1332; *Resnover v. State* (1984), Ind., 460 N.E.2d 922, 932, *reh. denied; Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied* (1984), 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219.

 Defendant does not contend that the interview was conducted under circumstances of intimidation. He does not allege that he was questioned in the presence of numerous uniformed officers or subjected to the display of police weapons, intense or aggressive interrogation, or other intimidating circumstances which overpowered his will or otherwise amounted to custodial interrogation. At the end of the interview, defendant confirmed that his statement had been given of his own free will and that no promises had been made to get him to make the statement.

We conclude that when questioned by State Fire Marshal investigators, defendant had not been taken into custody or otherwise deprived of his freedom of action in any significant way. Thus, at the point in time when defendant asked, "Shouldn't I wait 'til I get a lawyer," his right to counsel had not yet accrued. We therefore do not reach the question of whether defendant's words were sufficient to invoke his right to counsel.

 Defendant next contends that his inculpatory statements followed his arrest without probable cause. As discussed above, we find that the questioning of de-

fendant did not occur in a custodial environment. This determination is consistent with factually similar cases deciding the same issue.

In *Dunaway v. State* (1982), Ind., 440 N.E.2d 682, the defendant sought to suppress his inculpatory statement on grounds that it was given after he was illegally arrested without probable cause. The defendant had voluntarily accompanied officers to the police station. No weapons were drawn and the defendant was not handcuffed. He rode to the police station in the front seat of the police car, and was given a soft drink during the period of questioning. He read a statement of *Miranda* rights and signed the rights form before questioning started. The statement was completed in a little over one hour. After finishing his statement, the defendant asked to see his girlfriend "before he was arrested and taken to the county jail." We held:

> While it is true that defendant was not specifically informed at his home that he was not under arrest, no physical restraints were used. His previous experience with the law, his friendship with Officer Bratton, and his request to see his girlfriend "before he was arrested" all support the conclusion that he did not believe he was under arrest when he was transported to police headquarters. We find there was sufficient evidence here to support the trial court's finding that the defendant's confession was not the product of an illegal arrest.

440 N.E.2d at 685.

In *Dillon, supra,* we found sufficient evidence to support the trial court's ruling that the defendant's confession was not the product of illegal detention and was voluntarily given. The defendant voluntarily accompanied officers to the police station, and gave two voluntary statements. The officers expressly told the defendant that he did not have to come if he did not want to. He was not handcuffed or otherwise treated as a suspect. He talked with the officers in the sheriff's private office with doors unlocked and was not physically restrained, abused, or threatened. He was

not unreasonably interrogated or deprived of food, water, or rest. He admitted that he had not been threatened or coerced by police officers and that he signed the waiver of rights forms and gave the statements. There was no promise of leniency. We held this to be sufficient evidence to support the trial court's ruling.

It is clear that if a confession is the product of an unlawful detention or an illegal arrest it is inadmissible. [citations omitted] However, it is also clear that not every police-citizen encounter amounts to a "seizure" of the person so that an arrest or unlawful detention has occurred. The test for determining whether a person has been "seized" for Fourth Amendment purposes is whether, considering all the circumstances surrounding the police-citizen encounter, the defendant entertained a reasonable belief that he was not free to leave. [citations omitted]

*Dillon,* 454 N.E.2d at 851.

From our review of the circumstances surrounding defendant's encounter with the fire investigators, we find ample evidence demonstrating that defendant was not under arrest, and that he could not have entertained a reasonable belief that he was not free to leave. Thus it is inappropriate to determine whether sufficient probable cause existed at the time of his questioning.

Defendant's third issue, alleging insufficiency of evidence, is predicated upon the exclusion of defendant's confessions. Since we have found the trial court did not commit error in refusing to exclude the confessions, defendant's final contention is without merit.

We note that in its order denying defendant's motion to suppress, the trial court found that defendant was "in custody" but that defendant's statement was not an adequate "positive indication or manifestation of a desire for an attorney" in view of the defendant's voluntary, intelligent, and knowing waiver following the initial rights advisement. (R. 188) When we determine that the findings upon which a trial court based its ruling are erroneous, we will nevertheless affirm the ruling if the record shows it to be otherwise correct. *Hurst v. Board of Commissioners* (1985), Ind., 476 N.E.2d 832; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154; *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Cain v. State* (1973), 261 Ind. 41, 300 N.E.2d 89. Notwithstanding our disagreement with the trial court's "in custody" finding, its ultimate ruling of admissibility was correct for the reasons discussed previously in this opinion.

We determine from our review of the record that there was substantial evidence of probative value to support the trial court's refusal to exclude the confessions from evidence. The convictions are affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.