

FILED

Jun 18 2013, 6:11 am

CLERK
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DUANE CROCKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1210-CR-542 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1103-FC-7

**June 18, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

As Appellant-Defendant Duane Crocker drove Southbound on Interstate 65 in Tippecanoe County, Indiana State Police Trooper Joseph Winters pulled him over for speeding. Trooper Winters told Crocker to come sit in his car after he noticed, *inter alia*, that Crocker's eyes were bloodshot and glassy, he was nervous, the rental car in which he was driving had been rented to another person, and his hand shook approximately two inches up and down when he produced his driver's license. After Crocker gave inconsistent answers to Trooper Winters's questions, Trooper Winters obtained Crocker's consent to search his vehicle. The search uncovered ten bales of cellophane-wrapped marijuana in the trunk of Crocker's rented vehicle. During a police interview, Crocker admitted that he had been paid to transport the marijuana from Chicago to Cincinnati.

Crocker contends that the trial court abused its discretion in admitting evidence obtained during his traffic stop, arguing that Trooper Winters violated his rights pursuant to the United States and Indiana Constitutions. We conclude that, under the circumstances of this case, Crocker was subjected to an illegal custodial interrogation without being advised of his rights beforehand and therefore hold that the incriminating statements made to police should have been suppressed. We also conclude, however, that this error is harmless, as Crocker's consent to the search of his vehicle was valid and the physical evidence obtained therein was sufficient to sustain his convictions. We affirm.

**FACTS AND PROCEDURAL HISTORY**

At approximately 11:00 a.m. on March 12, 2011, Trooper Winters was driving an unmarked police vehicle and was "running traffic" from a cross-over at the 181 mile marker on I-65 in Tippecanoe County. Trial Tr. p. 15. Trooper Winters noticed a vehicle

2

traveling Southbound in the left-hand lane and activated his front antenna speed time device, which indicated the vehicle was travelling seventy-five miles per hour ("mph") in a seventy mph zone. By the time the vehicle had passed Trooper Winters's position, it had decelerated to sixty mph and shifted to the right-hand lane.

Trooper Winters pulled out behind the vehicle and followed it for approximately two and one-half to three miles, not pulling it over because the grade of the road in that stretch gave him officer safety concerns. As Trooper Winters followed the vehicle, he observed it cross over the fog line at least twice. The vehicle maintained a speed of sixty mph. Finally, Trooper Winters activated his emergency lights and stopped the vehicle. As Trooper Winters approached the vehicle on the passenger side, he noticed fresh fingerprints on the trunk lid and a bar code in the rear passenger-side window, an indication that the car was a rental. Trooper Winters made contact with the driver, Crocker, through the front passenger-side window and noticed that he had a "heightened level of nervousness [and] blood shot glossy eyes[.]" Trial Tr. p. 21. When asked for his driver's license, Crocker initially produced a Fraternal Order of Police card. When Crocker did produce his Ohio driver's license, his hands were "[f]lickering up and down … approximately two inches." Supp. Tr. p. 17. The Ohio rental agreement Crocker handed to Trooper Winters was in another person's name. Crocker claimed that his girlfriend's mother had rented the vehicle and that he had picked it up in front of his girlfriend's house in Ohio. Trooper Winters told Crocker to exit his vehicle and asked him to have a seat in the front seat of his police vehicle.

Once in the police vehicle, Trooper Winters administered the horizontal gaze nystagmus ("HGN") field sobriety test ("FST") to Crocker, which indicated no signs of alcohol intoxication. At 11:09 a.m., Trooper Winters activated his electronic citation and warning system and began entering Crocker's information into the system. While entering Crocker's information, Trooper Winters questioned Crocker further.

Trooper Winters asked Crocker his origin and destination, and Crocker replied that he was coming from his girlfriend's house in Chicago. Trooper Winters said, "you mean your girlfriend in Ohio and [Crocker] recanted [and] said my other girlfriend in Chicago." Trial Tr. p. 22. Trooper Winters asked the Chicago girlfriend's name, and Crocker replied, "Alicia." Trial Tr. p. 22. When asked for her last name, Crocker, stuttering and stammering, said "Keys." Trial Tr. p. 22. Trooper Winters laughed because Alicia Keys is the name of a popular musical entertainer, and Crocker then said that his Chicago girlfriend's name was actually Alicia Smith. When asked about luggage, Crocker denied having any.

At 11:13 a.m., Trooper Winters produced a "Consent to Search," or "*Pirtle*,"[1] form for Crocker to read, which provided, in relevant part, as follows:

<u>YOUR RIGHTS</u>

You have the following constitutional rights.
You have the right to require that a search warrant be obtained before any search of your property.
You have the right to refuse to consent to warrantless search.

---

[1] *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975). *See Clarke v. State*, 868 N.E.2d 1114, 1119 (Ind. 2007) ("*Pirtle v. State* … established that Article I, section 11 of the Indiana Constitution requires that a person in custody explicitly waive the right to counsel before giving a valid consent to a search.").

4

> You have the right to talk to a lawyer before giving consent to such a search.
> If you cannot afford a lawyer, one will be appointed for you.
> …
> <u>WAIVER AND CONSENT</u>
>
> I have read the statement of my rights and understand what my rights are. I do not want a lawyer at this time. I consent to a warrantless search by officers of the Indiana State Police of the following described property: <u>SB I65 NEAR 181 M MRKR DODGE CENTURY 276 LHN</u> located at <u>SB I65 NEAR 181 M</u>. I authorize these officers to seize any article of property which they consider evidence. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

State's Ex. 2. As Crocker was reviewing the form and shaking uncontrollably, he asked Trooper Winters what the warnings were for. Trooper Winters replied that he believed "that there were at least 80 pounds of marijuana in his trunk." Trial Tr. p. 49. At the time, Trooper Winters admittedly did not know what was in the trunk. Crocker did not respond and signed the consent form.

Trooper Winters asked Crocker how much marijuana was in the trunk, and Crocker responded that he did not know. Trooper Winters read Crocker his *Miranda*[2] warnings, which Crocker stated that he understood. Crocker indicated that he knew that there were "pounds" of marijuana in the trunk, but did not know how many. Trial Tr. p. 52.

After a Tippecanoe County Sherriff's Deputy arrived, Trooper Winters opened the trunk and found ten bales of marijuana wrapped in cellophane. The total weight of the marijuana was approximately 215 pounds. Crocker was transported to a State Police Post

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

and again read his *Miranda* rights, which he again indicated that he understood. Crocker admitted that he was being paid $5000.00 to drive the marijuana from Chicago to Cincinnati.

On March 16, 2011, the State charged Crocker with Class C felony dealing in marijuana, Class D felony marijuana possession, and Class D felony maintaining a common nuisance. On March 5, 2012, the trial court denied Crocker's motion to suppress evidence. After a bench trial, the trial court found Crocker guilty as charged. The trial court sentenced Crocker to an aggregate sentence of three years of incarceration to be followed by one year served in community corrections.

## DISCUSSION AND DECISION

### Whether the Trial Court Abused its Discretion in Admitting Evidence Obtained Following the Traffic Stop

Although Crocker frames the issue as a challenge to the denial of his pretrial motion to suppress evidence, he actually appeals from the allegedly erroneous admission of evidence at trial. The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182

(Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

## A. *Miranda*

Crocker argues that Trooper Winters's questioning of him was improper because it constituted a custodial interrogation and he had not yet been read his *Miranda* rights. "*Miranda* and its progeny have ruled that the [Fifth Amendment] right to counsel … accrues upon 'custodial interrogation.'" *Zook v. State*, 513 N.E.2d 1217, 1220 (Ind. 1987) (quoting *Miranda*, 384 U.S. at 444). This is because the right is "meant to overcome [that] inherently coercive and police dominated atmosphere[.]" *Davies v. State*, 730 N.E.2d 730, 733 (Ind. Ct. App. 2000) (citing *Miranda*, 384 U.S. at 444), *trans. denied*. "'Custodial interrogation'" has been explained to mean "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Zook*, 513 N.E.2d at 1220 (quoting *Miranda*, 384 U.S. at 444).

The State contends that Crocker was not in custody when sitting in Trooper Winters's vehicle and that the requirement to give him his *Miranda* rights was therefore not triggered. While it is true that "[o]rdinarily, persons detained for traffic stops are not 'in custody' for purposes of *Miranda*[,] [t]his is not to say a traffic stop may not turn into a custodial situation based upon the conduct of the officer." *Lockett v. State*, 747 N.E.2d 539, 543 (Ind. 2001) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

7

The law enforcement officer's duty to give *Miranda* warnings does not attach unless there has been such a restriction on a person's freedom as to render him in custody. A person is deemed to be in custody if a reasonable person in the same circumstances would not feel free to leave. Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

Courts have identified the following factors to be significant in determining whether a person is in custody: whether and to what extent the person has been made aware that he is free to refrain from answering questions; whether there has been prolonged coercive, and accusatory questioning, or whether police have employed subterfuge in order to induce self-incrimination; the degree of police control over the environment in which the interrogation takes place, and in particular whether the suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene.

*Gauvin v. State*, 878 N.E.2d 515, 520-21 (Ind. Ct. App. 2007) (citations omitted, formatting altered).

We conclude that Crocker was in custody when Trooper Winters was questioning him in Trooper Winters's vehicle. Although Crocker was not handcuffed or physically restrained, Trooper Winters had a high degree of control over the environment. The first thing Trooper Winters did after Crocker was in his vehicle was administer an FST. Crocker was never told that he did not have to answer Trooper Winters's questions or that he was free to go about his business. Although the questioning was neither prolonged nor aggressive, Trooper Winters did employ subterfuge, stating that he believed Crocker had at least eighty pounds of marijuana in his trunk when he admittedly did not know what was in the trunk. We believe that a reasonable person who is told to

8

sit in a police vehicle and then immediately subjected to an FST would not feel free to leave.

Given Crocker's nervous behavior and his bloodshot and "glossy" eyes, it does not strike us as unreasonable that Trooper Winters would investigate the possibility that Crocker might be impaired or that some other criminal activity might be afoot. Consequently, we conclude that it was reasonable to ask Crocker to exit his vehicle and then to question him further. The record does not reveal any reason, however, that Trooper Winters could not have continued his investigation on the roadside. While there are certain circumstances that might justify an officer having the subject of a traffic stop sit in his police vehicle, the record reveals no such circumstances in this case. *See Wilson v. State*, 745 N.E.2d 789, 793 (Ind. 2001) ("[W]e can envision various particularized circumstances (including, for example and without limitation, inclement weather, the lack of available lighting for paperwork, the need to access equipment with the detained motorist, etc.) that may make it reasonably necessary for police to require a stopped motorist to enter a police vehicle."). Here, there is no indication of inclement weather, unsafe conditions, or any other compelling reason to have Crocker in the vehicle. Although Trooper Winters did testify that he was entering Crocker's information into his computer as they spoke, the first thing Trooper Winters did was administer an HGN test, which certainly could have been done on the roadside. In any event, Trooper Winters never explained why Crocker had to be in the vehicle while his information was entered.

We do not wish to be understood as holding that a person is in custody whenever he is in a police vehicle. Under the totality of the circumstances of this case, however,

9

we conclude that Crocker was in custody as soon as he was in Trooper Winters's police vehicle. Consequently, Trooper Winters was required to read him his *Miranda* rights at that point, but did not. Any statements made after Crocker entered Trooper Winters's vehicle should have been suppressed. *See Miranda*, 384 U.S. at 444 ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."). This is not the end of our analysis, however, as the physical evidence seized from Crocker's vehicle was also incriminating, and *Miranda* only applies to statements. *See Hirshey*, 852 N.E.2d at 1015 (Ind. Ct. App. 2006) ("However, *Miranda* only requires suppression of statements, not physical evidence.").

## B. Fourth Amendment

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). "In *Wolf* [*v. People of State of Colorado*, 338 U.S. 25, 27 (1949) (overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961)] we recognized '(t)he security of one's privacy

against arbitrary intrusion by the police' as being 'at the core of the Fourth Amendment' and 'basic to a free society.'" *Id.*

Crocker argues that his consent to the search of his rental vehicle was not valid. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001). "One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search." *Id.*

> When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Thurman v. State*, 602 N.E.2d 548, 552 (Ind. Ct. App. 1992), *trans. denied.* The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Id.* A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Id.* To constitute a valid waiver of Fourth Amendment rights, a consent must be the intelligent relinquishment of a known right or privilege. *Id.* (quoting *United States v. Payne*, 429 F.2d 169 (9th Cir. 1970)). Such a waiver cannot be conclusively presumed from a verbal expression of assent unless the court determines, from the totality of the circumstances, that the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld. *Id.* Knowledge of the right to refuse a search is one factor which indicates voluntariness. *Id.*
>
> The "totality of the circumstances" from which the voluntariness of a detainee's consent is to be determined includes, but is not limited to, the following considerations: (1) whether the defendant was advised of his *Miranda* rights prior to the request to search; (2) the defendant's degree of education and intelligence; (3) whether the defendant was advised of his right not to consent; (4) whether the detainee has previous encounters with law enforcement; (5) whether the officer made any express or implied claims of authority to search without consent; (6) whether the officer was engaged in any illegal action prior to the request; (7) whether the defendant was cooperative previously; and (8) whether the officer was deceptive as to his true identity or the purpose of the search. *State v. Scheibelhut*, 673 N.E.2d 821, 824 (Ind. Ct. App. 1996).

11

*Callahan v. State*, 719 N.E.2d 430, 435 (Ind. Ct. App. 1999).

Although Crocker was not "*Mirandized*" before consenting to the search, he was given a written advisement of his *Pirtle* rights, which included explicit statements that he had the right to (1) refuse his consent, (2) force the State to obtain a warrant if Crocker so desired, and (3) speak to an attorney before consenting. Trooper Winters testified that Crocker looked at and reviewed the *Pirtle* form before signing it. The record indicates that Crocker is a college graduate who once worked at a bank, a background that gives no indication that Crocker would have difficulty understanding the *Pirtle* advisements. Trooper Winters did not claim the authority to search without Crocker's consent. Trooper Winters was forthright about the reason for wanting to search Crocker's vehicle, telling him that he expected to find marijuana. Trooper Winters was the only officer on the scene before Crocker consented to the search, making it less likely that Crocker's consent was a result of police intimidation. Although Trooper Winters did obtain incriminating statements from Crocker in violation of *Miranda*, Trooper Winters's misconduct was not particularly egregious, and it is significant that none of the incriminating statements was made until *after* Crocker consented to the search of his vehicle. Specifically, Crocker did not admit to knowing that he was transporting marijuana until after he consented to the search of his vehicle.

Crocker points to his testimony at the suppression hearing that he was asked multiple times to consent to the search of his vehicle and that he did not read the *Pirtle* warnings before signing the waiver. Crocker is inviting us to reweigh the evidence, which we will not do. The State has established that Crocker's consent to the search of

12

his vehicle was valid. As such, and even though we have concluded that Crocker's incriminating statements should have been suppressed, we conclude that the trial court did not abuse its discretion in determining that the physical evidence found in Crocker's vehicle was admissible pursuant to the Fourth Amendment. *See Hirshey*, 852 N.E.2d at 1011, 1015 (in case where statements made in violation of *Miranda* led to discovery of physical evidence, concluding that *Miranda* violation did not require suppression of physical evidence).[3]

## C. Harmless Error

Having determined that Crocker's incriminating statements were erroneously admitted, we must now determine if that error was harmless.

> Errors in the admission of evidence … are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id*. When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Smith v. State*, 839 N.E.2d 780, 784 (Ind. Ct. App. 2005).

*Robertson v. State*, 877 N.E.2d 507, 514 (Ind. Ct. App. 2007).

---

[3] Crocker argues that the nature of Trooper Winters's questions violated both the United States and Indiana Constitutions because they were unrelated to the reason for the traffic stop. Because we conclude that incriminating statements made by Crocker in response to Trooper Winters's questions in Trooper Winters's vehicle should have been suppressed pursuant to *Miranda*, these arguments could only apply to statements made before Crocker entered the vehicle. While some of those statements were somewhat suspicious and contradictory, however, none of them was incriminating. *See* BLACK'S LAW DICTIONARY 782 (8th ed. 2004) (defining "incriminating" as "Demonstrating or indicating involvement in criminal activity."). Consequently, we need not address Crocker's arguments related to the nature of Trooper Winters's questioning.

13

We conclude that the admission of Crocker's statements can only be considered harmless error. Under the facts of this case, in order to convict Crocker of (1) Class C felony dealing in marijuana, the State was required to prove that he possessed, with intent to deliver, marijuana in an amount greater than ten pounds, Ind. Code § 35-48-4-10; (2) Class D felony marijuana possession, the State was required to prove that he knowingly or intentionally possessed more than thirty grams of marijuana, Ind. Code § 35-48-4-11; and (3) Class D felony maintaining a common nuisance, the State was required to prove that he knowingly or intentionally maintained a vehicle that was used one or more times to unlawfully keep or deliver controlled substances. Ind. Code § 35-48-4-13(b).

Although the marijuana was not found in Crocker's actual possession, it was found in the trunk of a car Crocker was driving and over which he had exclusive control, which is sufficient to establish constructive possession. "In the absence of actual possession of drugs, our court has consistently held that 'constructive' possession may support a conviction for a drug offense." *Lampkins v. State*, 685 N.E.2d 698, 699 (Ind. 1997). "In order to prove constructive possession, the State must show that the defendant has both (1) the intent to maintain dominion and control and (2) the capability to maintain dominion and control over the contraband." *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999) (citing *Lampkins*, 685 N.E.2d at 699). "To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband." *Id*. "'This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the

14

contraband.'" *Taylor v. State*, 482 N.E.2d 259, 261 (Ind. 1985) (quoting *Woods v. State*, 471 N.E.2d 691, 694 (Ind. 1984)). Crocker's exclusive control over the vehicle he was driving is sufficient to establish constructive possession. *See Goliday*, 708 N.E.2d at 5, 7 (concluding that constructive possession was established where cocaine was found in trunk of vehicle defendant was driving where he was only person in vehicle).

As for Crocker's intent to deliver, we have held that "[i]llegal possession of large quantities of narcotics does not create a presumption of intent to deliver, but may support an inference of intent." *Romack v. State*, 446 N.E.2d 1346, 1351 (Ind. Ct. App. 1983) *recognized as being superseded on other grounds by statute in Adams v. State*, 968 N.E.2d 281, 285-86 (Ind. Ct. App. 2012), *trans. denied*. In *Romack*, the defendant was found in possession of 215 or 216 methaqualone tablets. *Id*. at 1349. Despite noting the lack of expert testimony regarding quantity and personal use, the *Romack* court nonetheless concluded that the large quantity of tablets was evidence tending to show the intent to deliver. *Id*. at 1351. The same is true here. As in *Romack*, the State produced no expert testimony that 215 pounds of marijuana is a "large" amount or inconsistent with personal use. We believe, however, that as much can be inferred from the facts that 215 pounds is an amount over twenty times greater than necessary to support Crocker's Class C felony dealing charge and over 3000 times greater than necessary to support his Class D felony possession charge. We conclude that the illegal possession of drugs in an amount so far above the statutory thresholds supports a reasonable inference that the possessor had the intent to deliver. In light of Crocker's possession of 215 pounds of

15

marijuana, we conclude that any error in the admission of incriminating statements can only be considered harmless.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.