**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 30 2014, 9:52 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN L. COOK**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN MCLAUGHLIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1305-CR-245 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jose Salinas, Judge
Cause No. 49G14-1207-FD-47894

**January 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

A police officer pulled over John McLaughlin for driving erratically; asked him for his license and registration; noticed he had bloodshot eyes, was nervous and fidgety, was sweating profusely, and was speaking rapidly but clearly; and asked him if he was okay and if he needed medical assistance. McLaughlin said his air conditioner was broken, but he was okay and did not need medical assistance. The officer ran McLaughlin's information and determined that he was a valid driver. After returning McLaughlin's license and registration, the officer asked McLaughlin if he could search his car. McLaughlin agreed, and drugs were found. The State charged McLaughlin with possession of heroin, and McLaughlin filed a motion to suppress, which the trial court denied.

McLaughlin now pursues this discretionary interlocutory appeal arguing that his *Pirtle* rights were violated because he was in custody and the officer did not advise him of his right to consult an attorney before asking for his consent to search his car. Although the officer did not advise McLaughlin of his right to consult an attorney, we find that this was a conventional traffic stop and McLaughlin was not in custody; therefore, a *Pirtle* advisement was not required. Accordingly, we affirm the trial court's denial of McLaughlin's motion to suppress.

**Facts and Procedural History**

Around 10:00 p.m. on July 12, 2012, Indianapolis Metropolitan Police Department Officer James Gillespie was driving northbound on Binford Boulevard en route to a call when he observed a black SUV driving "erratically" in the left lane in front of him. Tr. p.

2

7. The SUV drifted into the right lane, almost striking another car, then returned to the left lane. *Id.* at 7, 17.

Believing the driver was "distracted or impaired," Officer Gillespie "preempted" the call he was on and pulled over the SUV. *Id.* at 7. The SUV was driven by McLaughlin and had no passengers. Officer Gillespie asked McLaughlin for his license and registration. McLaughlin was nervous and fidgety, spoke rapidly, had bloodshot eyes, and was sweating profusely. *Id.* at 7, 21-22. When Officer Gillespie asked McLaughlin if he was okay, McLaughlin responded that the air conditioner in his SUV was broken, but he was fine. *Id.* at 8. Officer Gillespie returned to his car to perform a records check and determined that McLaughlin was a "valid driver." *Id.* Officer Gillespie walked back to McLaughlin's SUV and asked if he could call medics to come and check him because the officer was concerned for his welfare. *Id.* McLaughlin, who was speaking clearly and appeared to be of sound mind, said no because he was fine. *Id.* at 8, 24. Officer Gillespie then suggested that McLaughlin drive his SUV to a parking lot and have someone pick him up; McLaughlin declined this suggestion, too. *Id.* at 8. After returning McLaughlin's license and registration, Officer Gillespie asked McLaughlin if there was anything in his SUV that he needed to know about, such as guns, drugs, weapons of mass destruction, or "anything like that." *Id.* at 8-9. McLaughlin said no. Officer Gillespie then asked McLaughlin if he could "check real quick." *Id.* at 9. McLaughlin said that "would be fine." *Id.*

McLaughlin, who was still sweating, stepped outside his SUV. *Id.* Officer Gillespie conducted a patdown of McLaughlin to make sure he did not have any weapons on him. *Id.* at 9-10. Officer Gillespie looked into the SUV and, on the front passenger seat, saw a

3

Jolly Rancher box with several small pieces of aluminum foil. *Id.* at 10. According to Officer Gillespie, this was indicative of narcotics. *Id.* Officer Gillespie opened up one of the pieces of foil and observed a yellow-white powder, which he suspected to be an opiate. *Id.* Officer Gillespie then asked another officer, who had since arrived on the scene, to arrest McLaughlin and Mirandize him. *Id.*

Officer Gillespie showed McLaughlin the Jolly Rancher box and asked him what was inside; McLaughlin responded that it was a mixture of morphine and something else. *Id.* at 12. Officer Gillespie performed a horizontal gaze nystagmus, which McLaughlin passed. *Id.* at 22-23. Officer Gillespie continued the search and found a backpack in the backseat of the car. The backpack contained several syringes, a spoon with burn marks and drug residue, and cigarettes with the cotton removed, all of which indicated drug use to Office Gillespie. *Id.* at 12. Because McLaughlin's condition later worsened, he was taken to Wishard Hospital. *Id.* at 23.

The State charged McLaughlin with Class D felony possession of a narcotic drug (heroin) and Class A misdemeanor possession of paraphernalia. McLaughlin filed a motion to suppress the evidence found during the traffic stop pursuant to both the Indiana and United States Constitutions. Appellant's App. p. 5-6. At the motion-to-suppress hearing, Officer Gillespie testified as follows:

> [McLaughlin] declined medical attention. So he . . . said he was fine, and I can't force him to . . . seek medical assistance.
>
> * * * * *
>
> If he would not have consented to the search, he would have been free to leave.

4

He had an open laptop, several electronic devices as well. I don't know if he was playing on those things before I stopped him or not. I didn't know if he was distracted. And again, he was – he wasn't stumbling over his words. No slurred speech or anything like that. He was of sound mind and speaking to me just fine. And so I felt comfortable with letting him go ahead and find a parking lot.

Tr. p. 24. The trial court ruled that the search was "consensual" and that a *Pirtle* advisement did not need to be given because McLaughlin "was not under arrest at that point" and was free to leave. *Id.* at 57-59. As the trial court explained, when Officer Gillespie completed the traffic stop and returned McLaughlin's license and registration, he made a "judgment call" not to take McLaughlin into custody for a drug-related crime. *Id.* at 58. The trial court, however, suppressed the incriminating statements McLaughlin made after Officer Gillespie found the Jolly Rancher box and excluded the evidence found in the backpack. *Id.* at 62-63.

This discretionary interlocutory appeal pursuant to Indiana Appellate Rule 14(B) now ensues.

**Discussion and Decision**

McLaughlin contends that the trial court erred in denying his motion to suppress the evidence found during the traffic stop. We review the denial of a motion to suppress in a manner similar to reviewing the sufficiency of the evidence. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). We consider only the evidence favorable to the trial court's ruling, alongside substantial uncontradicted evidence to the contrary, to decide if that evidence is sufficient to support the denial. *Id.*

McLaughlin argues that his *Pirtle* rights were violated because he was asked to consent to a search of his car "without being told he had a right to consult an attorney." Appellant's Br. p. 6.

There is no federal constitutional right to counsel before consenting to a search even if the suspect is in custody. *Clarke v. State*, 868 N.E.2d 1114, 1119 (Ind. 2007) (citing *United States v. LaGrone*, 43 F.3d 332, 337 (7th Cir. 1994)). However, *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975), established that Article 1, Section 11 of the Indiana Constitution requires that a person in custody explicitly waive the right to counsel before giving a valid consent to a search.

Here, McLaughlin was not advised of his right to counsel before Officer Gillespie asked for consent to search his car. Therefore, if McLaughlin was in custody, his *Pirtle* rights were violated, and the motion to suppress should have been granted.

In determining whether a defendant was in custody when consent was requested, courts consider all circumstances surrounding the encounter and apply an objective test, asking whether a reasonable person under the same circumstances would believe that he was under arrest or not free to resist the entreaties of the police. *Meredith v. State*, 906 N.E.2d 867, 873 (Ind. 2009). However, a suspect who has been stopped by police and therefore has been "seized" for purposes of Article 1, Section 11 is not necessarily in custody. *Clarke*, 868 N.E.2d at 1119 (citing *Cooley v. State*, 682 N.E.2d 1277, 1279 (Ind. 1997)); *see also Meredith*, 906 N.E.2d at 873 ("A person stopped by police, while 'seized' and momentarily not free to go, is ordinarily not considered in custody."). Being stopped for a traffic violation, asked to present a license, asked to perform a field sobriety test, and

6

asked for consent to search a car is "nothing more than a conventional traffic stop" and "cannot fairly be characterized as the functional equivalent of formal arrest." *Meredith*, 906 N.E.2d at 874 (quotation omitted). Instead, something more is required to transform a conventional traffic stop into a custodial situation. In *Meredith*, our Supreme Court identified a non-exhaustive list of factors that help distinguish ordinary investigative detentions from full-blown custodial interrogations: (1) whether the defendant was read his *Miranda* rights, handcuffed, restrained in any way, or told that he was a suspect in a crime; (2) how vigorous was the law enforcement interrogation; (3) whether police suggested the defendant should cooperate, implied adverse consequences for noncooperation, or suggested that the defendant was not free to go about his business; and (4) the length of the detention. *Id.* at 873-74.

We find that the record here reveals a conventional traffic stop. Officer Gillespie observed McLaughlin driving erratically and initiated a traffic stop. Officer Gillespie asked McLaughlin for his license and registration and whether he was okay. After returning his license and registration, Officer Gillespie asked McLaughlin for consent to search his car. McLaughlin consented. This cannot fairly be characterized as the functional equivalent of a formal arrest. *See id.* at 874 ("Here, the record reveals nothing more than a conventional traffic stop. Viewed most favorably to the trial court's decision, the record shows only that Officer Lackey stopped the defendant for a traffic infraction; asked the defendant for his license; based on his perception of the smell of alcohol and the defendant's red eyes and nervousness, asked the defendant to perform a sobriety test; and then asked for consent to search the vehicle. Absent anything in the record pointing the

7

other way, '[t]reatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest.'" (citations omitted) (quotation omitted)).

In addition, none of the factors listed in *Meredith* were present when Officer Gillespie asked McLaughlin for consent to search his car. That is, McLaughlin was not read his *Miranda* rights, handcuffed, or restrained in any way. Officer Gillespie did not inform McLaughlin that he was a suspect in a crime, interrogate him, suggest that he should cooperate, or imply that he was not free to go about his business. Finally, McLaughlin was not detained for any significant amount of time. The facts here are distinguishable from those cases where the defendant was found to be in custody. *See, e.g.*, *Crocker v. State*, 989 N.E.2d 812 (Ind. Ct. App. 2013) (finding driver in custody when officer put him in police vehicle and questioned him there after officer noticed that driver's eyes were bloodshot and glassy, he was nervous, the rental car he was driving was in someone else's name, and his hands were shaking when he produced his driver's license), *trans. denied*; *Friend v. State*, 858 N.E.2d 646, 651 (Ind. Ct. App. 2006) ("Without question, a reasonable innocent person in Friend's position would not believe that he was free to leave or to resist the entreaties of the police. The State points out that Trooper Rowan told Friend that he was not under arrest. However, when the officer asked Friend for consent to search his vehicle, Friend had already been patted down for weapons, detained roughly forty-five minutes, and told repeatedly to stay in the patrol car. Finally, Friend was handcuffed but not Mirandized. Friend was clearly 'in custody' when asked to consent to the search and was not informed of his right to counsel before his consent was obtained."); *Sellmer v. State*, 842 N.E.2d 358 (Ind. 2006) (finding driver in custody where officer asked for her

8

consent to search three to five times, asked incriminating questions, told driver it was in her best interest to cooperate, and did not answer truthfully when driver asked the officer what her rights were); *Conwell v. State*, 714 N.E.2d 764 (Ind. Ct. App. 1999) (finding driver in custody when the officer immediately ordered driver out of car, handcuffed him, and placed him in a choke hold). Because McLaughlin was not in custody, his *Pirtle* rights did not attach.

Nevertheless, McLaughlin makes a unique argument. He claims that because he displayed "glaring signs of intoxication and heroin use," he should have been detained from the outset of the traffic stop and was therefore effectively in custody when he was asked for consent to search. Appellant's Br. p. 7-13. However, McLaughlin's subjective beliefs are not controlling because the test is an objective one. McLaughlin cannot retroactively and unilaterally place himself into custody. McLaughlin's argument amounts to a formulistic approach that when a person drives erratically, is nervous and fidgety, has bloodshot eyes, and is sweating, that person must be placed into custody. But that is not the law. Officer Gillespie made a reasonable determination, based on a number of factors, not to take McLaughlin into custody when he returned McLaughlin's license and registration. Because McLaughlin was not in custody, no *Pirtle* advisement was necessary. Accordingly, the trial court did not err in denying McLaughlin's motion to suppress.[1]

---

[1] McLaughlin also argues that his Fourth Amendment rights were violated. One well-recognized exception to the Fourth Amendment's warrant requirement is a voluntary and knowing consent to search. *Crocker*, 989 N.E.2d at 820. When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given. *Id.* The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Id.* McLaughlin notes that "where there is coercion there can be no consent." Appellant's Br. p. 16. McLaughlin, however, makes no argument that he was coerced into consenting to a search of his car. Moreover, our analysis above shows otherwise. There is no Fourth Amendment violation.

Affirmed.

RILEY, J., and MAY, J., concur.