*106 BRADFORD, Judge,
concurring in result.
Although I do not believe that Sergeant Weisner’s request that Lucas sit in his patrol vehicle violated Lucas’s rights under the Fourth Amendment,[1]1 concur in result with the majority opinion because, under the circumstances, I believe that Lucas was subjected to an illegal custodial interrogation without first being advised of her rights. I would therefore conclude that the incriminating statements made to Sergeant Weisner and the physical evidence recovered from Lucas’s vehicle during the search incident to her arrest should have been suppressed.
“Miranda[2] and its progeny have ruled that the [Fifth Amendment] right to counsel ... accrues upon ‘custodial interrogation.’ ” Zook v. State, 513 N.E.2d 1217, 1220 (Ind.1987) (quoting Miranda, 384 U.S. at 444, 86 S.Ct. 1602). This is because the right is “meant to overcome [that] inherently coercive and police dominated atmosphere[.]” Davies v. State, 730 N.E.2d 726, 733 (Ind.Ct.App.2000) (citing Miranda, 384 U.S. at 444, 86 S.Ct. 1602), trans. denied. ‘“Custodial interrogation’ ” has been explained to mean “ ‘questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ ” Zook, 513 N.E.2d at 1220 (quoting Miranda, 384 U.S. at 444, 86 S.Ct. 1602).
Crocker v. State, 989 N.E.2d 812, 818 (Ind.Ct.App.2013) trans. denied.
In Crocker, the defendant challenged the admissibility of statements he made while sitting in an officer’s patrol vehicle, claiming that his statements should be suppressed because he had not been Miran-dized before making the statements. Id. The State argued that the defendant’s statements were admissible because the defendant was not in custody when sitting in the officer’s patrol vehicle. Id. In considering whether the defendant was in custody for purposes of Miranda, we stated as follows:
While it is true that “[o]rdinarily, persons detained for traffic stops are not ‘in custody[1] for purposes of Miranda [,] [t]his is not to say a traffic stop may not turn into a custodial situation based upon the conduct of the officer.” Lockett v. State, 747 N.E.2d 539, 543 (Ind.2001) (quoting Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).
The law enforcement officer’s duty to give Miranda warnings does not attach unless there has been such a restriction on a person’s freedom as to render him in custody. A person is deemed to be in custody if a reasonable person in the same circumstances would not feel free to leave. *107 Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Courts have identified the following factors to be significant in determining whether a person is in custody: whether and to what extent the person has been made aware that he is free to refrain from answering questions; whether there has been prolonged coercive, and accusatory questioning, or whether police have employed subterfuge in order to induce self-incrimination; the degree of police control over the environment in which the interrogation takes place, and in particular whether the suspect’s freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene.
Gauvin v. State, 878 N.E.2d 515, 520-21 (Ind.Ct.App.2007) (citations omitted, formatting altered).
Id. at 818-19.
Upon review, we concluded that the defendant was in custody when the officer was questioning him in the officer’s patrol vehicle. Id. at 819. Although the defendant was not handcuffed or physically restrained, the officer had a high degree of control over the environment. Id. The first thing the officer did after the defendant was in his vehicle was administer a field sobriety test. Id. The defendant was never told that he did not have to answer the officer’s questions or that he was free to go about his business. Although the questioning was neither prolonged nor aggressive, the officer employed subterfuge when talking to the defendant. Id. Moreover, although the officer was entering the defendant’s information in his computer as they spoke, the officer did not explain why the defendant needed to be in the officer’s patrol vehicle while his information was entered or why the field sobriety test could not have been administered on the roadside. Id.
Under the totality of the circumstances of the case, we concluded that the defendant was in custody as soon as he was in the officer’s patrol vehicle. Id. at 819-20. In reaching this conclusion, we stated that we believe that a reasonable person who is told to sit in a police vehicle and then immediately subjected to a field sobriety test would not feel free to leave. Id. at 819. We further reiterated, however, that we did not “wish to be understood as holding that a person is in custody whenever he is in a police vehicle.” Id.
In the instant matter, nothing in the record indicates that the weather conditions or the environmental surroundings necessitated Sergeant Weisner’s request that Lucas exit her vehicle and get into his patrol vehicle. In addition, Sergeant Weisner admitted that he did not have any safety concerns which would necessitate asking Lucas to exit her vehicle and get into his patrol vehicle. Within a minute or two of Lucas getting into Sergeant Weisner’s patrol vehicle, Sergeant Weis-ner claimed to have smelled the odor of alcoholic beverages on Lucas’s breath. He then asked Lucas if she had been drinking, and when she answered affirmatively, he conducted various field sobriety tests. Similar to the situation presented *108 in Crocker, Sergeant Weisner had a high degree of control over the environment despite the fact that Lucas was not handcuffed or physically restrained. Once Lucas was in Sergeant Weisner’s patrol vehicle, Sergeant Weisner almost immediately began questioning Lucas and conducting field sobriety tests. Nothing in the record indicates that Sergeant Weisner told Lucas that she did not have to answer his questions or that she was free to leave. I do not believe that a reasonable person in Lucas’s situation would feel free to refrain from answering Sergeant Weisner’s question or to leave his patrol vehicle. As such, under the totality of the circumstances, I would conclude that, for the purposes of Miranda, Lucas was in custody as soon as she was in Sergeant Weis-ner’s patrol vehicle.
Because I believe Lucas was in custody for the purposes of Miranda, I would further conclude that any statements made by Lucas after she entered Sergeant Weis-ner’s patrol vehicle should be suppressed. Furthermore, with respect to the marijuana which was ultimately discovered during a search of Lucas’s vehicle incident to her arrest for operating a vehicle while intoxicated, I would conclude that the marijuana should be suppressed as it was “fruit of the poisonous tree,” i.e., evidence that would not have been discovered but for Lucas’s inadmissible statements that were made once she was in the front seat of Sergeant Weisner’s patrol vehicle. Put another way, but for Lucas’s admission that she was operating her vehicle after having drank alcoholic beverages, Lucas would not have been arrested and Sergeant Weisner would not have searched Lucas’s vehicle. Accordingly, I agree with the majority that the trial court erred in denying Lucas’s motion to suppress.

. While I recognize that in the instant matter, an arguably less restrictive procedure would have been for Sergeant Weisner to allow Lucas to remain in her vehicle while he verified that her license was expired, I do not believe that Sergeant Weisner acted unreasonably in asking Lucas to wait in the front passenger seat of his patrol vehicle as he did so. The law is clear that law enforcement officers "may, as a matter of course, order the driver ... to exit a lawfully stopped vehicle.” Tumblin v. State, 736 N.E.2d 317, 321 (Ind.Ct.App.2000) (citing Tawdul v. State, 720 N.E.2d 1211, 1214 (Ind.Ct.App.1999), trans. denied). "Once a vehicle has been lawfully stopped, the additional intrusion of asking the driver ... to exit is 'de minimis,’ essentially an 'inconvenience.' " Id. (citing Tawdul, 720 N.E.2d at 1214). Here, Sergeant Weisner's request essentially amounts to an inconvenience as it did not elongate the traffic stop or amount to a forcible detention of Lucas.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).