**Jesse A. SIMMONS, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 26A01–0205–CR–186.

Court of Appeals of Indiana.

Dec. 31, 2002.

Publication Ordered Jan. 8, 2003.

Steven L. Whitehead, Princeton, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Jesse A. Simmons ("Simmons") brings this interlocutory appeal challenging the trial court's denial of Simmons' motion to suppress certain breath and alcohol test results. We affirm.

### Issues

The issue presented is whether the trial court properly denied Simmons' motion to suppress.

### Facts and Procedural History

During the early morning hours of October 28, 2001, Officer Darrell Parker ("Offi-

cer Parker") of the Fort Branch Police Department was called to the scene of an accident involving the crash of a vehicle in a ditch. As he arrived at the location, Officer Parker found an unoccupied pickup truck crashed on its side in the ditch, and saw a tractor turning onto a driveway not far from the crashed vehicle. Gibson County Sheriff's Department Deputy Anthony J. Meredith ("Deputy Meredith") subsequently arrived on the scene, and proceeded up the driveway onto which the tractor had turned to determine whether the owner of the crashed vehicle was at the residence. Deputy Meredith saw Simmons and his sister standing outside the house. Simmons told Deputy Meredith that he had tried to pull the crashed vehicle out of the ditch with his tractor, but that he not know who owned the truck or where the owner was. Deputy Meredith then proceeded back down the driveway toward the road.

As he was returning to the scene of the accident, Deputy Meredith saw a green pickup truck sitting to the side of the driveway with its windows down and the keys in the ignition. Deputy Meredith returned to the residence and asked Simmons if he knew who owned the vehicle. Simmons and his sister told Deputy Meredith that they did not know who owned the vehicle, but suggested that the driver might have stopped in their driveway to assist the driver of the crashed vehicle. Deputy Meredith returned to the scene of the accident and relayed this information to Officer Parker. Deputy Meredith then determined the identity of the owner of the crashed vehicle, and left the scene to visit the owner's residence.

Officer Parker remained to clean up the accident scene. Although the crashed vehicle was towed away, Officer Parker decided to remain in the vicinity because he thought that the owner of the green pickup truck might return. He accordingly parked his police vehicle nearby. After waiting for approximately fifteen minutes, the lights of the green pickup came on, and the truck proceeded up the driveway toward Simmons' residence. Officer Parker followed the truck up the driveway in his police vehicle and activated the vehicle's emergency lights. The truck pulled up beside a shed adjacent to the house, and Simmons got out. Officer Parker again asked Simmons if he knew who owned the truck. Simmons again denied knowing who owned the truck, and said he was simply moving the vehicle so that his parents, who were returning from vacation, could get into the driveway. During their conversation, Officer Parker noticed the strong smell of alcohol on Simmons' breath. He then performed field sobriety tests, most of which Simmons failed. Simmons also registered positive on a portable breathalyzer test. Officer Parker then asked Simmons to take a certified breath test, and Simmons agreed. Officer Parker took Simmons to the Gibson County jail for the test, and Simmons registered a blood alcohol level of .18.

The State charged Simmons with Operating a Vehicle While Intoxicated, a Class A misdemeanor, Operating a Vehicle with an Alcohol Concentration of .15% or Above, a Class A misdemeanor, and Minor Consumption of an Alcoholic Beverage, a Class C misdemeanor. On November 11, 2001, Simmons filed a motion to suppress the breathalyzer test results. The trial court heard the motion on January 17, 2002, and denied it. The trial court then certified its order for interlocutory appeal. This Court accepted jurisdiction on July 8, 2002.

### Discussion and Decision

#### A. Standard of Review

Our standard of review for the denial of a motion to suppress evidence is

similar to other sufficiency issues. *Ammons v. State*, 770 N.E.2d 927, 930, (Ind. Ct.App.2002), *trans. denied.* We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Id.* We do not reweigh the evidence and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* However, this review is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.*

## B. Analysis

■ Simmons argues that the trial court abused its discretion by refusing to suppress the blood alcohol evidence because Officer Parker lacked reasonable suspicion to conduct an investigatory stop in violation of the Fourth Amendment. A police officer may briefly detain an individual for investigatory purposes if the officer has reasonable suspicion based on specific and articulable facts that criminal activity has occurred. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct.App.2000), *trans. denied.* However, when a law enforcement officer makes a casual and brief inquiry of a citizen involving neither an arrest nor a stop, no Fourth Amendment interest is implicated. *Id.* The record here indicates that Officer Parker did not conduct an investigatory stop of Simmons; rather Officer Parker simply approached Simmons in his driveway as part of Officer Parker's legitimate and entirely non-criminal investigation into the crash and abandonment of the vehicle in Simmons' ditch. Officer Parker's encounter with Simmons accordingly did not need to be justified by the reasonable suspicion of criminal activity.

The investigation of the crash and abandonment of the vehicle on Simmons' property was well within Officer Parker's authority. Pursuant to Indiana Code section 9–26–2–1(1), police officers must investigate all motor vehicle accidents that result in injury. Given the fact that the vehicle abandoned in the ditch had rolled over, Officer Parker had reason to believe that the person or persons traveling in the crashed vehicle might have been injured. While Officer Meredith determined the identity of the abandoned vehicle's owner and left the scene for the owner's residence, the officers had no indication that the vehicle's owner was driving it at the time of the accident, and no indication of the number or identity of any passengers. Moreover, Officer Parker clearly had reason to believe that the driver of the green pickup truck parked in Simmons' driveway was either involved in, or at least had information regarding, the crash and abandonment of the vehicle in the ditch. Simmons and his sister told Officer Meredith that they did not know who left the pickup truck in their driveway, and that they suspected that the driver of that vehicle might have stopped in their driveway while assisting the driver of the crashed vehicle. Officer Meredith relayed this information to Officer Parker. Officer Parker specifically testified that as a result of this information, he was on the lookout for the operator of the green pickup truck.

Officer Parker testified that he parked his police vehicle at the side of the road in the hope that someone would return to the green pickup truck. When he saw the lights of the truck come on and the truck move forward toward Simmons' house, he drove up the driveway and flashed his emergency lights. Simmons then got out of the truck, and Officer Parker asked him who the truck belonged to and why Simmons was driving it.˙ When Simmons answered, Officer Parker smelled alcohol on the man's breath.

■ Officer Parker had not subjected Simmons to an investigatory detention at the time he smelled alcohol on Simmons'

breath. Rather, he simply approached Simmons in his driveway as part of his legitimate and non-criminal investigation into the earlier accident. As this Court noted in *Overstreet,*

> [n]ot every encounter between a police officer and a citizen amounts to a seizure requiring objective justification. To characterize every street encounter between a citizen and the police as a seizure, while not enhancing any interest guaranteed by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.... Indeed, it is not the purpose of the Fourth Amendment to eliminate all contact between police and the citizenry.

724 N.E.2d at 664 (citations omitted). The primary determination to be made when considering whether an encounter between a citizen and a police officer constitutes a "stop" requiring additional justification is whether the citizen was under the reasonable impression that he was not free to leave the officer's presence. *Crabtree v. State,* 762 N.E.2d 241, 245 (Ind.Ct.App. 2002). Here, there is no evidence in the record that Officer Parker did or said anything that would give Simmons the impression that he was not free to terminate the conversation that ensued and return to his residence. In particular, Simmons was on his own property and there is no indication that Officer Parker told Simmons to stop or asked for his identification or vehicle registration and insurance information. The only thing Officer Parker did to initiate the encounter was to activate his emergency lights. Given the fact that the events occurred at approximately two o'clock in the morning in a dark, rural area, and in light of the length of Simmons' driveway, it appears that Officer Parker activated his emergency lights simply to announce his presence and to get Simmons' attention. The use of his lights under the circumstances was no more coercive than if he had called out to Simmons and asked to have a word with him.

In summary, Officer Parker engaged in a consensual encounter with Simmons as part of his legitimate investigation into the crash and abandonment of the vehicle in Simmons' ditch. The evidence does not indicate that Officer Parker had subjected Simmons to an investigatory detention at the time he smelled alcohol on Simmons' breath, and Officer Parker's initial encounter with Simmons therefore did not need to be justified by a reasonable suspicion of criminal activity. The trial court therefore did not err in denying Simmons' motion to suppress.

Affirmed.

SULLIVAN, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent.

Contrary to the conclusion reached by the majority, I believe that Simmons was subjected to an investigatory stop. Citing *Crabtree v. State,* 762 N.E.2d 241, 245 (Ind.Ct.App.2002), the majority notes that not every encounter between a citizen and a police officer constitutes an investigatory stop, but to constitute a stop, the citizen must be under a reasonable impression that he was not free to leave the officer's presence. In this case, Officer Parker proceeded up Simmons' driveway at approximately two o' clock in the morning in a dark, rural area, with his emergency lights activated and pulled up next to the truck Simmons had been driving. Although I agree with the majority that it is possible that Officer Parker may have activated his emergency lights merely to announce his presence, it is not Officer Parker's intention which controls, but whether a reasonable person would be under the

impression that he was free to leave the officer's presence. Under these facts and circumstances, I do not believe a reasonable person would feel free to leave the officer's presence, and therefore, the encounter between Simmons and Officer Parker did constitute an investigatory stop requiring reasonable suspicion of criminal activity.

The Fourth Amendment "prohibits 'unreasonable searches and seizures' by the Government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *State v. Glass*, 769 N.E.2d 639, 641 (Ind. Ct.App.2002), *trans. denied* (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). However, "it is well-settled Fourth Amendment jurisprudence that police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind.Ct. App.2000), *trans. denied* (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The reasonable suspicion inquiry is determined on a case-by-case basis." *Glass*, 769 N.E.2d at 643. Reasonable suspicion requires something more than "an inchoate and unparticularized suspicion or hunch," but considerably less than proof of wrongdoing by a preponderance of the evidence. *Person v. State*, 764 N.E.2d 743, 748 (Ind.Ct.App.2002), *trans. denied.*

In this case, at the time that he made the investigatory stop, Officer Parker knew only that: 1) there had been an accident which resulted in a pickup truck lying on its side in a nearby ditch; 2) Simmons and his sister did not know what happened to cause the accident or the identity or whereabouts of the driver of the truck involved; 3) a second truck was sitting off to the south side of Simmons's driveway, but neither Officer Parker nor Deputy Meredith believed that it was involved in the accident; 4) neither Simmons nor his sister knew to whom that truck belonged; but 5) neither Simmons nor his sister had requested that the truck be towed from their property; and 6) Simmons had suggested that maybe the driver of the green pickup truck in his driveway stopped to assist the driver of the truck involved in the accident. Tr. p. 5. At the hearing, Officer Parker stated that the green pickup truck was properly plated, it was on private property, and the truck was not in violation of any statute or ordinance. Tr. pp. 12, 14. Importantly, Officer Parker also testified that he did not have any knowledge that Simmons was or might be intoxicated at the time Simmons was driving the pickup truck up the driveway. Tr. p. 15.

While it likely seemed odd to Officer Parker that neither driver of the two pickup trucks was present, I do not believe that the facts of this case rise to the level of reasonable suspicion required in order to make an investigatory stop. Officer Parker may have had a hunch that something was amiss, but as our court has previously stated, "a 'hunch' is not sufficient to authorize an investigatory stop." *Bovie v. State*, 760 N.E.2d 1195, 1198 (Ind. Ct.App.2002); *see also Williams v. State*, 745 N.E.2d 241, 245 (Ind.Ct.App.2001). Here, the green pickup truck was on private property, and the residents of that property, Simmons and his sister, did not want it to be removed. Officer Parker could have run the license plate number on the truck to discover who owned it, but he chose not to do so.[1] Additionally, at the

---

1. Deputy Meredith did run the license plate information, but did not write it down and did not relay that information to Officer Parker. Tr. p. 40.

hearing on the motion to suppress, Officer Parker merely stated that he thought the pickup truck was suspicious; he did not give any indication that he believed that any criminal activity had occurred.

The citizens of Indiana should not be subjected to surveillance by a police officer when that officer has no reason to suspect that any criminal activity has occurred or may be afoot. Under these facts and circumstances, I would hold that the trial court abused its discretion when it denied Simmons motion to suppress.

### ORDER

Comes now the Court, on its own motion, and FINDS AND ORDERS that this Court's opinion heretofore handed down in this cause on December 31, 2002, marked Memorandum Decision should now be ordered published.

All Panel Judges Concur.