# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**ROBERT D. KING, JR.**
**DAVID R. THOMPSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Aug 14 2014, 9:33 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEPHANIE LUCAS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 03A01-1309-CR-389 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Kathleen T. Coriden, Judge
Cause No. 03D02-1206-FD-2859

**August 14, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Stephanie M. Lucas (Lucas), brings an interlocutory appeal of the trial court's Order denying her motion to suppress evidence obtained in the course of a traffic stop.

We reverse.

## ISSUE

Lucas raises four issues on interlocutory appeal, one of which we find dispositive and restate as follows: Whether the trial court erred by denying Lucas' motion to suppress evidence that was obtained in violation of her Fourth Amendment rights.

## FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on May 23, 2012, Sergeant Kriston K. Weisner (Sergeant Weisner) of the Bartholomew County Sheriff's Office observed a 1996 green Ford Thunderbird driving along U.S. 31 in Edinburgh, Indiana. As he drove behind the Thunderbird, Sergeant Weisner conducted a routine license plate check and discovered that the vehicle's registered owner, Lucas, had an expired driver's license. Thus, when Lucas turned into a gas station parking lot, Sergeant Weisner followed and activated the emergency lights on his patrol vehicle to initiate a traffic stop. Sergeant Weisner approached Lucas' driver-side window and observed that she was smoking a freshly lit cigarette. Sergeant Weisner explained to Lucas that he had stopped her for driving with an expired license, to which she responded that it must have expired on her birthday, one month earlier. "Maybe a minute, two minutes" into the traffic stop, Sergeant Weisner

2

requested that Lucas exit her vehicle, extinguish her cigarette, and accompany him to his squad car in order to "review the information and decide what we were going to do." (Transcript pp. 22, 41). Lucas complied, and once seated in the front seats of the patrol vehicle, they "began talking about her expired license." (Tr. p. 34). "[W]ithin a minute or so" of this discussion, Sergeant Weisner detected the odor of alcohol on her breath. (Tr. p. 34). He questioned Lucas as to whether she had been drinking, and she admitted that she had consumed four sixteen-ounce beers.

While still seated in his patrol vehicle, Sergeant Weisner administered a variety of field sobriety tests on Lucas, as well as a portable breathalyzer test. Lucas passed the backward count test but failed the horizontal gaze nystagmus test and the finger count test. The results of the breathalyzer revealed that Lucas had a blood alcohol content (BAC) of 0.11. Sergeant Weisner subsequently instructed Lucas to exit the vehicle for additional field sobriety testing. Lucas successfully completed the one-leg stand test but failed the walk-and-turn test. Based on his observations during the field sobriety tests, Sergeant Weisner asked Lucas to submit to a certified chemical breath test, and she consented. Sergeant Weisner transported her to the Bartholomew County Jail and administered the chemical breath test at 1:37 a.m. The results indicated a BAC of 0.10. Pursuant to police protocol, Lucas' vehicle was towed, and during an inventory search thereof, Sergeant Weisner discovered a small amount of marijuana. No citation was issued for the expired driver's license.

On June 4, 2012, the State filed an Information, charging Lucas with Count I, operating a vehicle while intoxicated, a Class D felony, Ind. Code §§ 9-30-5-2(a), -3(a)(1);

3

and Count II, operating a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per 210 liters of the person's breath, a Class D felony, I.C. §§ 9-30-5-1(a), -3(a)(1). On July 29, 2013, the State amended the Information, charging Lucas with Count III, possession of marijuana, a Class A misdemeanor, I.C. § 35-48-4-11.

On March 12, 2013, Lucas filed a motion to suppress. She argued that because Sergeant Weisner had "subjected [her] to an investigatory detention which exceeded its permissible scope" and because Sergeant Weisner "is not properly certified to conduct chemical tests[,]" "all evidence seized as a result of the investigatory detention[] should be suppressed pursuant to the fruit of the poisonous tree doctrine." (Appellant's App. p. 15). On June 14, 2013, the trial court conducted a suppression hearing and subsequently denied Lucas' motion on July 17, 2013. The trial court found that "[Sergeant] Weis[n]er's reasons for requesting [Lucas] to accompany him to his car were legitimate and not unnecessarily intrusive and appropriate during an investigatory stop." (Appellant's App. p. 9). The trial court further found that Sergeant Weisner was "properly certified [as a] breath test operator and was at the time of [Lucas'] stop" and that "[t]he manner of certification of [Sergeant] Weisner . . . was done pursuant to the regulations set forth by the Indiana Department of Toxicology and was endorsed by the Director of the Department of Toxicology." (Appellant's App. p. 10).

A jury trial was scheduled for the end of August, but on August 8, 2013, Lucas petitioned the trial court to certify its suppression Order for interlocutory appeal. The trial

4

court granted Lucas' petition on August 13, 2013. On October 25, 2013, we accepted jurisdiction. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Our standard for reviewing a trial court's denial of a motion to suppress is similar to the standard of review employed in sufficiency of the evidence cases. *Simmons v. State*, 781 N.E.2d 1151, 1153-54 (Ind. Ct. App. 2002). On appeal, we must determine whether there is "substantial evidence of probative value" to support the trial court's ruling. *Id.* at 1154. We do not reweigh the evidence, we construe all conflicting evidence in favor of the trial court's decision, and we consider any uncontested evidence in the defendant's favor. *Id.* A trial court's determination of reasonable suspicion and probable cause is reviewed *de novo*. *Thayer v. State*, 904 N.E.2d 706, 709 (Ind. Ct. App. 2009).

### II. *Fourth Amendment*

Lucas claims that the scope of Sergeant Weisner's traffic stop violated her rights under the Fourth Amendment to the United States Constitution. Lucas does not dispute that Sergeant Weisner had a lawful basis for initiating the traffic stop based on her expired driver's license. *See* I.C. §§ 9-24-1-1(1), -8(a). Rather, Lucas claims that the trial court should have granted her motion to suppress the evidence obtained during the stop because Sergeant Weisner failed to use the least intrusive means reasonably available to investigate the traffic violation.

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers,

5

and effects[] against unreasonable searches and seizures" by the government. U.S. CONST. amend. IV. *See Thayer*, 904 N.E.2d at 709. Stopping a vehicle and detaining its occupants is considered a "seizure" for Fourth Amendment purposes. *Id.* It is well settled that "[a] traffic stop is more akin to an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968), than a custodial arrest." *Lockett v. State*, 747 N.E.2d 539, 541 (Ind. 2001), *reh'g denied*. In line with the Fourth Amendment, a police officer may "briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur." *State v. Augustine*, 851 N.E.2d 1022, 1025 (Ind. Ct. App. 2006).

The "touchstone" of any Fourth Amendment analysis is "'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam) (quoting *Terry*, 392 U.S. at 19). The reasonableness of an investigative stop is determined by examining "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. A police officer's observation of a traffic infraction provides the requisite reasonable suspicion to justify the initial stop. *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). Thereafter, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop[,]" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Once the purpose of the stop has been fulfilled, a police officer may not "expand his or her

6

investigation subsequent to the stop [unless] other circumstances arise after the stop, which independently provide the officer with reasonable suspicion of other crimes." *State v. Morris*, 732 N.E.2d 224, 228 (Ind. Ct. App. 2000). In the present case, it is undisputed that Sergeant Weisner was justified in stopping Lucas for driving with an invalid license; thus, our analysis turns on the reasonableness of Sergeant Weisner's subsequent conduct.

In claiming that Sergeant Weisner failed to employ the least intrusive means reasonably available to complete the traffic stop, Lucas asserts that "[t]here can be no argument that [it] is more intrusive on a citizen to have an investigation which can be conducted at the side of her vehicle conducted inside a police vehicle." (Appellant's Br. p. 17). Relying on the United States Supreme Court's decision in *Florida v. Royer*, 460 U.S. at 491, Lucas argues that Sergeant Weisner lacked "a legitimate law enforcement purpose" to justify relocating Lucas from her own vehicle to his patrol vehicle in order to investigate her expired driver's license. (Appellant's Br. pp. 17-18). In *Royer*, detectives at an airport approached a suspected drug smuggler and requested that he produce his airline ticket and identification. *Royer*, 460 U.S. at 494. After noticing a discrepancy in the suspect's documentation, the detectives shifted their investigation from the concourse to a small, private room, where the detectives obtained permission to search the suspect's luggage. *Id.* The Court determined that the suspect's consent to the luggage search, which resulted in the discovery of drugs, was invalid because "the detention to which he was then subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity." *Id.* at 502. Although the *Royer* Court noted that safety and security concerns might warrant moving a suspect from one location to another during an

7

investigatory detention, it could not find "that the legitimate law enforcement purposes which justified the detention in the first instance were furthered by removing [the suspect] to the police room prior to the officer's attempt to gain his consent to a search of his luggage." *Id.* at 505.

According to Lucas, the present case is analogous to *Royer* as Sergeant Weisner testified during the suppression hearing that "there was no law enforcement purpose for talking about [Lucas' expired license] inside [his] vehicle[,]" and he could have just as easily executed the stop at the side of her vehicle. (Tr. p. 28). In particular, the record reveals that when Sergeant Weisner approached Lucas' driver-side window, he had already confirmed that the registered owner of the vehicle had an expired driver's license; however, it is unclear whether Sergeant Weisner asked Lucas to provide her driver's license, vehicle registration, or any other type of identification. In addition, Sergeant Weisner testified that he asked Lucas to join him in his vehicle in order to discuss her options for resolving the traffic infraction—which might include calling someone to give her a ride, issuing a citation, or providing her with a limited opportunity to renew her license. Yet, Sergeant Weisner explained that Lucas did not really have an "option" as he would solely determine the outcome of the traffic stop. Sergeant Weisner also mentioned that he asked Lucas to sit in the patrol vehicle because he intended to "look[] at the actual readout showing the date of the expiration, confirming whether it was or was not on her birthday" but later stated that he would not have been "allowed to show [Lucas] the screen." (Tr. pp. 41-42). Moreover, Sergeant Weisner testified that there were no safety concerns prompting his decision to have Lucas transfer from her vehicle to his, which is also why he did not

8

perform a pat-down to search Lucas for weapons. He stated that the gas station parking lot was well lit, and he did not indicate that there were any other environmental conditions that would necessitate conducting the traffic stop inside of his patrol vehicle—such as inclement weather or a hazardous roadway.

Despite the seeming similarities between *Royer* and the case at hand, the State maintains that temporarily detaining Lucas in Sergeant Weisner's patrol vehicle did not violate her Fourth Amendment rights. Instead, the State directs our attention to the longstanding tenet of Fourth Amendment jurisprudence that authorizes law enforcement officers, in the course of a lawful traffic stop, to order the driver and passengers to exit the vehicle for the duration of the stop. *Mimms*, 434 U.S. at 109. While the State would infer that this rule necessarily includes the authority to redirect the motorists into the police officers' vehicles, we consider the legitimate law enforcement purpose that gave rise to "this per se rule." *Tumblin v. State*, 736 N.E.2d 317, 321-22 (Ind. Ct. App. 2000), *trans. denied*. The Supreme Court recognized the "inordinate risk" that police officers encounter in the course of traffic stops—including the possibility that the driver will assault the officer, as well as the hazards posed by passing traffic. *Mimms*, 434 U.S. at 110-11. Balancing the need to protect police officers against "the individual's right to personal security free from arbitrary interference by law officers[,]" the Court concluded that a driver would endure only a "*de minimis*" additional intrusion into her personal liberty if ordered to exit her vehicle. *Id.* at 109-11. The Supreme Court further explained that

> [t]he driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend

9

that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "petty indignity." What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

*Id.* at 111 (quoting *Terry*, 392 U.S. at 17) (citation omitted). Thus, because the Court justified even a *de minimis* intrusion with concerns of officer safety, we decline to find that the right of police officers to order a driver to exit his vehicle during an investigatory stop necessarily authorizes police officers to place the individual in the patrol vehicle absent some legitimate law enforcement purpose. *See Berry v. State*, 574 N.E.2d 960, 964-65 (Ind. Ct. App. 1991) (finding safety concerns justified the police officers' detainment of a motorist in their patrol vehicle while they ran a license check because they "were stopped in a high crime area, and many people were gathering around the vehicles"), *reh'g denied, trans. denied*.

In further support of its argument, the State points to several decisions rendered by the 6th, 7th, 8th, and 9th Circuit Courts that uphold the constitutionality of detaining a suspect in a patrol vehicle for a temporary investigation. The State is correct that some of these cases condone temporary detention in a patrol vehicle as a matter of standard procedure. *See United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). Yet, in some of the other cases referenced by the State, we see legitimate law enforcement purposes— namely, officer safety—supporting the officer's decision to detain a driver in his patrol vehicle. *See United States v. Parr*, 843 F.2d 1228, 1229-30 (9th Cir. 1988). Nevertheless, we find two Indiana cases to be more instructive on this issue.

10

First, in *Wilson v. State*, 745 N.E.2d 789, 791 (Ind. 2001), a police officer initiated a lawful traffic stop for speeding and, after detecting an odor of alcohol and other indications of intoxication, requested that the defendant exit his vehicle and accompany the officer to his squad car for further investigation. Prior to placing the defendant in his patrol vehicle, the officer conducted a pat-down search and discovered a handgun. *Id.* Seeking to have the handgun suppressed, the defendant challenged "the reasonableness during a routine traffic stop of placing a motorist in the police car thereby subjecting him to a preliminary pat-down search." *Id.* at 792-93. In analyzing whether the police officer employed "the 'least intrusive means reasonably available[,]'" our supreme court noted "various particularized circumstances . . . that may make it reasonably necessary for police to require a stopped motorist to enter a police vehicle." *Id.* at 793 (quoting *Royer*, 460 U.S. at 500). Among these circumstances, the court identified, "without limitation, inclement weather, the lack of available lighting for paperwork, [and] the need to access equipment with the detained motorist." *Id.* In the absence of any such circumstance, the supreme court specifically

> decline[d] to hold that the Fourth Amendment permits the police routinely to place traffic stop detainees in a police vehicle if this necessarily subjects the detainee to a preliminary pat-down frisk. An officer is not using the least intrusive means to investigate a traffic stop if, without a particularized justification making it reasonably necessary, he places a person into his patrol vehicle and thereby subjects the person to a pat-down search.

*Id.* Because the police officer could have administered the field sobriety tests and portable breathalyzer test outside of his patrol vehicle, the court found the search violated the Fourth Amendment. *Id.*

11

Second, in *Crocker v. State*, 989 N.E.2d 812, 820 (Ind. Ct. App. 2013), *trans. denied*, a police officer initiated a lawful traffic stop for speeding and, after observing signs of the driver's impairment and nervousness, requested that the driver exit his vehicle and sit in the police vehicle. *Id.* at 816. From there, the officer administered field sobriety tests and asked additional questions. *Id.* We found that the defendant's statements should have been suppressed because the defendant was not advised of his *Miranda* warnings, and "a reasonable person who is told to sit in a police vehicle and then immediately subjected to [field sobriety testing] would not feel free to leave." *Id.* at 819. Moreover, while we found that it was reasonable for the officer to request that the defendant exit his vehicle for further questioning in light of the signs of his impairment, we discerned no reason that the police officer "could not have continued his investigation on the roadside." *Id.* Even though the police officer argued that he was entering information into his computer while they were in the patrol car, the officer failed to "explain[] why [the defendant] had to be in the vehicle while his information was entered." *Id.* The issue in *Crocker* centered on a Fifth Amendment custodial interrogation rather than the intrusiveness of a Fourth Amendment seizure, but the fact that we found the officer's conduct was unreasonable because he lacked a "compelling reason" to conduct his investigation inside his police vehicle rather than the roadside is equally applicable to the present situation. *Id.*

It is clear from our readings of *Wilson* and *Crocker* that, absent reasonable suspicion or another law enforcement purpose, officers may not expand the scope of the investigatory stop if it is going to expose the individual to a more intrusive search. Accordingly, like the courts in *Wilson* and *Crocker*, we do not endorse a blanket rule precluding an officer from

12

ever detaining a suspect in the squad car during a traffic stop. Rather, because this additional intrusion exceeds the *de minimis* level of intrusion established in *Mimms* for asking a driver to simply exit his vehicle, we hold only that Sergeant Weisner's decision to place Lucas in the squad car must have been justified by some particular circumstance that reasonably furthered a law enforcement purpose.

Here, Sergeant Weisner could not identify one reason related to the initial purpose of the stop for needing Lucas to sit in his patrol vehicle; in fact, he readily admitted that he could have accomplished his objective at the side of her vehicle. The State offers that Lucas' expired license would prevent her from driving herself away at the completion of the traffic stop, so she "was going to have to wait at the scene with Sergeant Weisner" until other arrangements for her transportation could be made. (State's Br. p. 13). Therefore, the State contends that this "particularized circumstance" warranted Sergeant Weisner's placement of Lucas in his squad car. (State's Br. p. 13). We disagree. We first note that Sergeant Weisner never advanced this as a reason for removing her to his vehicle; he explained that he wanted to discuss her options, which he conceded he could have done at the side of her vehicle, but he did not claim that she was going to have to wait inside of his vehicle until transportation arrived. Second, at the completion of the stop, Lucas could have walked somewhere, she could have arranged for a ride and waited in her own vehicle, or she could have waited inside of the gas station. While Lucas might have requested that Sergeant Weisner wait with her until she could secure alternate transportation, the State does not explain why Lucas would have been subject to confinement in Sergeant Weisner's vehicle. *See Lewis v. State*, 755 N.E.2d 1116 (Ind. Ct. App. 2001) (holding that it was

13

reasonably necessary for the police officer to conduct a pat-down search prior to placing a motorist in the squad car where the motorist's expired license prevented him from driving himself and he had requested that the officer transport him to a telephone).

In addition, during the suppression hearing, Sergeant Weisner explained that he requested that Lucas relocate to his squad car, "[p]artially," because he wanted to talk to her in a controlled environment where he would be able to discern any odors of drugs or alcohol on her person as part of his "normal procedure." (Tr. pp. 27-28). To this end, Sergeant Weisner clarified that he saw it as a "red flag" that Lucas was smoking a cigarette when he approached her vehicle because "[i]t is common that when someone has a freshly lit cigarette it could be used to mask odors inside the vehicle." (Tr. pp. 25, 30). Although we have previously determined that "[d]etecting the odor of alcohol on a person's breath does not constitute a search" subject to Fourth Amendment protection, Sergeant Weisner ceded that there was no evidence to indicate that Lucas was intoxicated to support the suspicion that she was trying to conceal another odor. *Crump v. State*, 740 N.E.2d 564, 572 (Ind. Ct. App. 2000), *trans. denied*. Instead, Sergeant Weisner testified that he did not observe any speeding, improper lane changes, or other erratic driving; he did not detect the odor of alcohol while he was talking with Lucas at the side of her vehicle; nor did Lucas exhibit any hallmarks of intoxication, such as glassy or bloodshot eyes, slurred speech, or unsteadiness. *See Gatewood v. State*, 921 N.E.2d 45, 48 (Ind. Ct. App. 2010), *trans. denied*. Thus, because Sergeant Weisner did not have a reasonable suspicion to investigate Lucas for operating while intoxicated until *after* she was inside the squad car, he did not

14

further any legitimate law enforcement purpose related to her expired driver's license by transferring her to his vehicle.

Finally, the State espouses the reasonableness of Sergeant Weisner's traffic stop based on Sergeant Weisner's testimony that Lucas voluntarily complied with his request to sit in the squad car. Although Sergeant Weisner did not inform Lucas that she had the option to remain in her own vehicle, he testified that if she had expressed her reluctance, he would have instead completed the traffic stop "at her vehicle outside of mine." (Tr. p. 28). Because she was still clearly being stopped for her expired license, we cannot find that a reasonable person in her situation would have felt free to decline Sergeant Weisner's request to shift the interaction to his patrol vehicle, and certainly no reasonable person would have felt free to exit the police vehicle. *See Payne v. State*, 854 N.E.2d 1199, 1204-05 (Ind. Ct. App. 2006), *trans. denied*.

We recognize "the heartbreaking effects of drunk driving in our [S]tate" and the importance of providing our law enforcement with the necessary tools to protect the public from these dangerous situations. *Robinson v.* State, 5 N.E.3d 362, 368 (Ind. 2014). While there is no bright-line test for evaluating whether an investigatory stop satisfies the reasonableness requirement of the Fourth Amendment, an investigative stop must be accomplished using the least intrusive means readily available absent some particular circumstance justifying an additional intrusion. *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Here, the traffic stop was more intrusive than authorized for a permissible investigatory stop because Sergeant Weisner did not articulate a legitimate reason as to why he could not complete his investigation standing alongside Lucas' vehicle. As a result,

15

suppressing the evidence obtained after Sergeant Weisner unreasonably moved Lucas to his squad car is necessary as a means of deterring police officers from impinging the guarantees of the Fourth Amendment in the future. *See Camp v. State*, 751 N.E.2d 299, 302-03 (Ind. Ct. App. 2001), *trans. denied*. We therefore conclude that the trial court should have granted Lucas' motion to suppress.

## CONCLUSION

Based on the foregoing, we conclude that the evidence obtained as a result of Lucas' unlawful investigatory stop should be suppressed.

Reversed.

ROBB, J. concurs

BRADFORD, J. concurs in result with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

STEPHANIE LUCAS,         )
                                   )

   Appellant-Defendant,     )
                                   )

       vs.               )    No. 03A01-1309-CR-389
                                   )

STATE OF INDIANA,       )
                                   )

   Appellee-Plaintiff.       )

**BRADFORD, Judge, concurring in result.**

Although I do not believe that Sergeant Weisner's request that Lucas sit in his patrol vehicle violated Lucas's rights under the Fourth Amendment,[1] I concur in result with the majority opinion because, under the circumstances, I believe that Lucas was subjected to

---

[1] While I recognize that in the instant matter, an arguably less restrictive procedure would have been for Sergeant Weisner to allow Lucas to remain in her vehicle while he verified that her license was expired, I do not believe that Sergeant Weisner acted unreasonably in asking Lucas to wait in the front passenger seat of his patrol vehicle as he did so. The law is clear that law enforcement officers "may, as a matter of course, order the driver … to exit a lawfully stopped vehicle." *Tumblin v. State*, 736 N.E.2d 317, 321 (Ind. Ct. App. 2000) (citing *Tawdul v. State*, 720 N.E.2d 1211, 1214 (Ind. Ct. App. 1999), *trans. denied*). "Once a vehicle has been lawfully stopped, the additional intrusion of asking the driver … to exit is 'de minimis,' essentially an 'inconvenience.'" *Id*. (citing *Tawdul*, 720 N.E.2d at 1214). Here, Sergeant Weisner's request essentially amounts to an inconvenience as it did not elongate the traffic stop or amount to a forcible detention of Lucas.

17

an illegal custodial interrogation without first being advised of her rights. I would therefore conclude that the incriminating statements made to Sergeant Weisner and the physical evidence recovered from Lucas's vehicle during the search incident to her arrest should have been suppressed.

> "*Miranda*[2] and its progeny have ruled that the [Fifth Amendment] right to counsel ... accrues upon 'custodial interrogation.'" *Zook v. State*, 513 N.E.2d 1217, 1220 (Ind. 1987) (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). This is because the right is "meant to overcome [that] inherently coercive and police dominated atmosphere[.]" *Davies v. State*, 730 N.E.2d 726, 733 (Ind. Ct. App. 2000) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602), *trans. denied*. "'Custodial interrogation'" has been explained to mean "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *Zook*, 513 N.E.2d at 1220 (quoting *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602).

*Crocker v. State*, 989 N.E.2d 812, 818 (Ind. Ct. App. 2013) *trans. denied*.

In *Crocker*, the defendant challenged the admissibility of statements he made while sitting in an officer's patrol vehicle, claiming that his statements should be suppressed because he had not been Mirandized before making the statements. *Id*. The State argued that the defendant's statements were admissible because the defendant was not in custody when sitting in the officer's patrol vehicle. *Id*. In considering whether the defendant was in custody for purposes of *Miranda*, we stated as follows:

> While it is true that "[o]rdinarily, persons detained for traffic stops are not 'in custody' for purposes of *Miranda*[,] [t]his is not to say a traffic stop may not turn into a custodial situation based upon the conduct of the officer." *Lockett v. State*, 747 N.E.2d 539, 543 (Ind. 2001) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

---

² *Miranda v. Arizona*, 384 U.S. 436 (1966).

18

> The law enforcement officer's duty to give *Miranda* warnings does not attach unless there has been such a restriction on a person's freedom as to render him in custody. A person is deemed to be in custody if a reasonable person in the same circumstances would not feel free to leave. Whether a person was in custody depends upon objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Courts have identified the following factors to be significant in determining whether a person is in custody: whether and to what extent the person has been made aware that he is free to refrain from answering questions; whether there has been prolonged coercive, and accusatory questioning, or whether police have employed subterfuge in order to induce self-incrimination; the degree of police control over the environment in which the interrogation takes place, and in particular whether the suspect's freedom of movement is physically restrained or otherwise significantly curtailed; and whether the suspect could reasonably believe that he has the right to interrupt prolonged questioning by leaving the scene.

*Gauvin v. State*, 878 N.E.2d 515, 520-21 (Ind. Ct. App. 2007) (citations omitted, formatting altered).

*Id*. at 818-19.

Upon review, we concluded that the defendant was in custody when the officer was questioning him in the officer's patrol vehicle. *Id*. at 819. Although the defendant was not handcuffed or physically restrained, the officer had a high degree of control over the environment. *Id*. The first thing the officer did after the defendant was in his vehicle was administer a field sobriety test. *Id*. The defendant was never told that he did not have to answer the officer's questions or that he was free to go about his business. Although the

questioning was neither prolonged nor aggressive, the officer employed subterfuge when talking to the defendant. *Id*. Moreover, although the officer was entering the defendant's information in his computer as they spoke, the officer did not explain why the defendant needed to be in the officer's patrol vehicle while his information was entered or why the field sobriety test could not have been administered on the roadside. *Id*.

Under the totality of the circumstances of the case, we concluded that the defendant was in custody as soon as he was in the officer's patrol vehicle. *Id*. at 819-20. In reaching this conclusion, we stated that we believe that a reasonable person who is told to sit in a police vehicle and then immediately subjected to a field sobriety test would not feel free to leave. *Id*. at 819. We further reiterated, however, that we did not "wish to be understood as holding that a person is in custody whenever he is in a police vehicle." *Id*.

In the instant matter, nothing in the record indicates that the weather conditions or the environmental surroundings necessitated Sergeant Weisner's request that Lucas exit her vehicle and get into his patrol vehicle. In addition, Sergeant Weisner admitted that he did not have any safety concerns which would necessitate asking Lucas to exit her vehicle and get into his patrol vehicle. Within a minute or two of Lucas getting into Sergeant Weisner's patrol vehicle, Sergeant Weisner claimed to have smelled the odor of alcoholic beverages on Lucas's breath. He then asked Lucas if she had been drinking, and when she answered affirmatively, he conducted various field sobriety tests. Similar to the situation presented in *Crocker*, Sergeant Weisner had a high degree of control over the environment despite the fact that Lucas was not handcuffed or physically restrained. Once Lucas was in Sergeant Weisner's patrol vehicle, Sergeant Weisner almost immediately began

20

questioning Lucas and conducting field sobriety tests. Nothing in the record indicates that Sergeant Weisner told Lucas that she did not have to answer his questions or that she was free to leave. I do not believe that a reasonable person in Lucas's situation would feel free to refrain from answering Sergeant Weisner's question or to leave his patrol vehicle. As such, under the totality of the circumstances, I would conclude that, for the purposes of *Miranda*, Lucas was in custody as soon as she was in Sergeant Weisner's patrol vehicle.

Because I believe Lucas was in custody for the purposes of *Miranda*, I would further conclude that any statements made by Lucas after she entered Sergeant Weisner's patrol vehicle should be suppressed. Furthermore, with respect to the marijuana which was ultimately discovered during a search of Lucas's vehicle incident to her arrest for operating a vehicle while intoxicated, I would conclude that the marijuana should be suppressed as it was "fruit of the poisonous tree," *i.e.*, evidence that would not have been discovered but for Lucas's inadmissible statements that were made once she was in the front seat of Sergeant Weisner's patrol vehicle. Put another way, but for Lucas's admission that she was operating her vehicle after having drank alcoholic beverages, Lucas would not have been arrested and Sergeant Weisner would not have searched Lucas's vehicle. Accordingly, I agree with the majority that the trial court erred in denying Lucas's motion to suppress.