

I N T H E

# Court of Appeals of Indiana

Edgar R. Martinez-Orta,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Mar 18 2025, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

March 18, 2025

Court of Appeals Case No.
24A-CR-1456

Appeal from the Tippecanoe Superior Court

The Honorable Michael A. Morrissey, Judge

Trial Court Cause No.
79D06-2212-CM-3175

**Opinion by Judge Foley**
Judges May and Weissmann concur.

**Foley, Judge.**

[1] Edgar R. Martinez-Orta ("Martinez-Orta") was convicted after a bench trial of operating a vehicle with an alcohol concentration equivalent ("ACE") of .15 or more[1] as a Class A misdemeanor and failure to dim headlights[2] as a Class C infraction. On appeal, Martinez-Orta argues that the trial court abused its discretion when it determined that State's Exhibit 8, the blood test results, was admissible. He specifically asserts that the trial court abused its discretion because:

I. The traffic stop violated his Fourth Amendment rights because law enforcement failed to use the least intrusive means reasonably available to investigate Martinez-Orta's traffic violation; and

II. The State failed to lay a proper foundation for the admission of the blood test results because Martinez-Orta claims that the State failed to prove that a nurse adhered to the foundational protocols defined in Indiana Code section 9-30-6-6.

[2] We affirm.

---

[1] Ind. Code § 9-30-5-1(b).

[2] I.C. §§ 9-21-8-51, 9-21-8-49(a).

## Facts and Procedural History[3]

Around 3:20 a.m. on November 20, 2022, Indiana State Trooper Mitchell McKinney ("Trooper McKinney") was driving in West Lafayette, Indiana, when he observed a vehicle driven by Martinez-Orta traveling in the opposite direction with its high-beam headlights on. When Martinez-Orta failed to dim his headlights as he passed Trooper McKinney, the trooper initiated a traffic stop.

For safety reasons, Trooper McKinney approached the passenger side window and observed that Martinez-Orta was the sole occupant of the vehicle. Because the window was closed, Trooper McKinney shined his flashlight into the vehicle and knocked on the window to get Martinez-Orta to open it. When Martinez-Orta opened the window, Trooper McKinney observed that he had bloodshot, "glossy" eyes and "his speech was slow and slurred." Tr. Vol. 2 p. 11. When questioned about where he was traveling from, Martinez-Orta stated he had just dropped someone off but refused to say where he had been before that. When asked if he consumed any alcohol, Martinez-Orta denied drinking any alcohol.

At that point, based on his training and experience and his observations, Trooper McKinney believed that Martinez-Orta may have been impaired. He

---

[3] Oral argument was heard on this case on February 25, 2025, at the Hulman Memorial Student Union at Indiana State University in Terre Haute, Indiana. We commend counsel on the excellent quality of their written and oral advocacy and thank Professor David Bolk and the University for their hospitality.

asked Martinez-Orta to exit his vehicle and sit in the front passenger seat of the patrol car while Trooper McKinney checked his license and registration and completed paperwork. The traffic stop occurred in a dark location without streetlights on a cold, windy night in November. Trooper McKinney asked Martinez-Orta to sit in his patrol car because he did not want to leave him in the driver's seat due to the trooper's suspicion that Martinez-Orta was impaired and because of the cold, windy weather. While in the patrol car with Martinez-Orta, Trooper McKinney noticed Martinez-Orta smelled of alcohol and appeared to be trying to conceal the odor by opening the front passenger window and exhaling outside.

[6] Trooper McKinney asked Martinez-Orta if he was willing to do standardized field sobriety tests, and Martinez-Orta stated he would. Trooper McKinney then administered the horizontal gaze nystagmus test, during which Martinez-Orta exhibited all six possible indicators of impairment, resulting in failure of the test. At that point, Trooper McKinney asked Martinez-Orta if he would consent to a breathalyzer test or to a blood draw, and Martinez-Orta did not consent to either test. Thereafter, Trooper McKinney obtained a search warrant for a blood draw and transported Martinez-Orta to IU Health Arnett ("IU Health") hospital.

[7] At the hospital, registered nurse Samantha Barnett ("Barnett") drew Martinez-Orta's blood at 4:38 a.m. After the blood was drawn, Barnett handed the blood samples to Trooper McKinney, and adhering to chain of custody procedures,

the blood samples were mailed to the Indiana State Department of Toxicology for testing. Later testing revealed Martinez-Orta's ACE was .237.

[8] On December 8, 2022, the State charged Martinez-Orta with Class C misdemeanor operating a vehicle while intoxicated, Class A misdemeanor operating a vehicle with an ACE of .15 or more, and Class C infraction failure to dim headlights. Before trial, Martinez-Orta filed a motion to suppress all evidence resulting from the traffic stop because of alleged Fourth Amendment violations. Martinez-Orta also separately moved to suppress the blood test results, alleging that the foundational requirements under Indiana Code section 9-30-6-6 were not met. The trial court scheduled a suppression hearing. Martinez-Orta later filed a motion to waive jury trial and to vacate the previously set suppression hearing, requesting that the suppression issues be determined during the bench trial.

[9] On May 21, 2024, a bench trial was conducted, during which the trial court determined Martinez-Orta's suppression issues did not have merit and admitted the blood test results, which were reflected in State's Exhibit 8. At the conclusion of the bench trial, the trial court found Martinez-Orta not guilty of operating while intoxicated but guilty of operating a vehicle with an ACE of .15 or more and determined he committed the infraction of failure to dim headlights. The trial court sentenced Martinez-Orta to 365 days with 364 days suspended to probation and imposed a fine of $500. Martinez-Orta now appeals.

## Discussion and Decision

During the bench trial, Martinez-Orta orally framed the issue as whether the evidence should be suppressed. However, because Martinez-Orta now appeals following a completed trial, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the trial court. *Cox v. State*, 160 N.E.3d 557, 560 (Ind. Ct. App. 2020). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Bell v. State*, 81 N.E.3d 233, 236 (Ind. Ct. App. 2017), *trans. denied.* We also consider the uncontested evidence favorable to the defendant. *Id.* However, "when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Guilmette v. State*, 14 N.E.3d 38, 40–41 (Ind. 2014).

## I. Traffic Stop

Martinez-Orta contends that the trial court abused its discretion in admitting State's Exhibit 8, the blood test results, which were derived from the traffic stop, because Trooper McKinney failed to use the least intrusive means reasonably available to investigate the traffic violation. Because a traffic stop is a seizure under the Fourth Amendment, law enforcement must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place. *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

"'An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred.'" *Miller v. State*, 188 N.E.3d 871, 875 (Ind. 2022) (quoting *Meredith*, 906 N.E.2d at 870). "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). Here, Martinez-Orta does not dispute Trooper McKinney was justified in stopping him for failure to dim headlights; thus, our analysis turns on the reasonableness of Trooper McKiney's subsequent conduct.

[12] Such a detention for a minor traffic violation "must be temporary and last no longer than is necessary to effectuate the purpose of the stop[,]" and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500 (1983). A seizure that is lawful at its inception may violate the Fourth Amendment "if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.* A constitutional extension of the traffic stop requires reasonable suspicion of some criminal activity other than the activity that prompted the original stop. *Powers v. State*, 190 N.E.3d 440, 445–46 (Ind. Ct. App. 2022). An officer's decision to place someone in a squad car must be justified by some particular

circumstance that reasonably furthers a law enforcement purpose. *Lucas v. State*, 15 N.E.3d 96, 104 (Ind. Ct. App. 2014), *trans. denied*.

[13] Martinez-Orta argues that Trooper McKinney unlawfully extended the traffic stop for failure to dim headlights by placing him in the trooper's patrol car, and therefore, any evidence discovered after such unlawful action, including the blood test results, should not have been admitted. He asserts that Trooper McKinney did not have any legitimate law enforcement purpose to place Martinez-Orta in the patrol car. All in all, Martinez-Orta argues that Trooper McKinney was not constitutionally justified in placing him in the patrol car, and doing so made all subsequent evidence inadmissible.

[14] Here, it is undisputed that Trooper McKinney had a lawful basis for initiating the traffic stop for failure to dim headlights. When Trooper McKinney approached Martinez-Orta's passenger side window to speak with him, the window was closed, and Trooper McKinney had to shine his flashlight into the vehicle and knock on the window to get Martinez-Orta's attention to open the window. Once Martinez-Orta opened the window, Trooper McKinney observed that he had bloodshot, "glossy" eyes and "his speech was slow and slurred." Tr. Vol. 2 p. 11. The trooper inquired as to where he was traveling from, and Martinez-Orta stated he had just dropped someone off but refused to say where he had been before that. At that point, Trooper McKinney testified that he had reasonable suspicion of criminal activity, in that he believed that Martinez-Orta may be intoxicated. *Id.* at 12. Based on the delayed reactions of Martinez-Orta, his bloodshot and glossy eyes, slurred speech, and refusal to

state where he was coming from, we conclude that reasonable suspicion existed that Martinez-Orta may have been intoxicated.

[15] Trooper McKinney then asked Martinez-Orta to exit his vehicle and to have a seat in the trooper's patrol car. At that point, the traffic stop was still ongoing as the trooper still needed to collect personal information from Martinez-Orta, run all of that information to determine Martinez-Orta's identity and driving status, and write up the paperwork for the traffic infraction. Additionally, because Trooper McKinney had reasonable suspicion that Martinez-Orta was intoxicated, the trooper was justified in further investigating whether Martinez-Orta was indeed intoxicated. Further, Trooper McKinney articulated a legitimate law enforcement purpose for requesting Martinez-Orta to sit in the patrol car because he believed it was not safe to leave Martinez-Orta in his own car based on his suspected impairment and did not believe it was safe for Martinez-Orta to stand on the side of the road because it was "very cold that night and windy" and the area where they were stopped was dark with no streetlights. *Id*. at 12, 16. Thus, Martinez-Orta was placed in the patrol car for his own safety while Trooper McKinney continued his investigation into both the traffic infraction and his suspicion that Martinez-Orta was intoxicated. Once the two were in the patrol car, Trooper McKinney smelled the odor of alcohol on Martinez-Orta and noticed that he appeared to be trying to conceal the odor by opening the front passenger window and exhaling outside. This led the trooper to obtain Martinez-Orta's consent to administer the horizontal gaze nystagmus test, which Martinez-Orta failed. After this failure and Martinez-

Orta's refusal to consent to a breathalyzer test or blood draw, Trooper McKinney obtained a search warrant for a blood draw.

[16] In asserting that Trooper McKinney's action of placing Martinez-Orta in the patrol car violated the Fourth Amendment, Martinez-Orta asserts that the present case is "strikingly similar" to *Lucas v. State*, 15 N.E.3d 96. Appellant's Br. p. 14. There, while driving behind the defendant, the officer ran the license plate of the vehicle and determined that the registered owner had an expired driver's license, which led to the officer initiating a traffic stop. *Id*. at 98. After first speaking with the defendant at her vehicle, the officer asked her to relocate to his patrol car to discuss the expired license, and once inside his patrol car, he detected alcohol on her breath and conducted field sobriety tests. *Id.* at 99. In that case, the officer ultimately arrested the driver for operating a vehicle while intoxicated but did not issue a citation for the expired driver's license. *Id*. At an ensuing suppression hearing, the officer admitted he could have conducted the expired license investigation from beside the defendant's vehicle, and he had no safety concerns or other valid reasons for relocating the driver to his patrol car. *Id*. at 104. On appeal, this court reversed the trial court's denial of the defendant's motion to suppress evidence, holding that the traffic stop became unconstitutionally intrusive under the Fourth Amendment when the officer required the defendant to move to his patrol vehicle without any legitimate law enforcement purpose. *Id*. at 104–05. Because no legitimate law enforcement purpose was articulated as a reason for placing the defendant in the officer's car, and the evidence of intoxication was only discovered after this

unjustified intrusion, all evidence obtained after the defendant was moved to the patrol car had to be suppressed. *Id*.

[17] We find *Lucas* distinguishable from the present case. First, here, prior to asking Martinez-Orta to sit in his patrol car, Trooper McKinney had already developed reasonable suspicion that Martinez-Orta was intoxicated. Further, unlike the officer in *Lucas*, Trooper McKinney identified legitimate law enforcement purposes for placing Martinez-Orta in the patrol car, explaining that his decision to move Martinez-Orta was motivated by his suspicion that Martinez-Orta was intoxicated and should not be left behind the wheel, and the fact that it was cold outside, and the area was unlit. Trooper McKinney articulated a legitimate law enforcement purpose, and the traffic stop was not unduly intrusive under Fourth Amendment jurisprudence. Therefore, Martinez-Orta has not established that the blood test results were inadmissible due to the nature of the traffic stop.

## II.   Foundation for Blood Test Results

[18] Martinez-Orta argues that the trial court abused its discretion when it admitted the blood test results into evidence because he contends that the State failed to lay a proper foundation for the admission of the evidence. Indiana Code section 9-30-6-6(a) sets out the foundational requirements for the admission of chemical tests on blood. Pursuant to that statute, blood samples collected at the request of a law enforcement officer as part of a criminal investigation must be obtained by "[a] person trained in . . . obtaining bodily substance samples and

acting under the direction of or under a protocol prepared by a physician, or a licensed health care professional acting within the professional's scope of practice and under the direction of or under a protocol prepared by a physician[.]" Ind. Code § 9-30-6-6(a). "'The foundation for admission of laboratory blood drawing and testing results, by statute, involves technical adherence to a physician's directions or to a protocol prepared by a physician.'" *Martin v. State*, 154 N.E.3d 850, 853 (Ind. Ct. App. 2020) (quoting *Hopkins v. State*, 579 N.E.2d 1297, 1303 (Ind. 1991)), *trans. denied*. "This is not a requirement that may be ignored." *Combs v. State*, 895 N.E.2d 1252, 1256 (Ind. Ct. App. 2008), *trans. denied*.

[19] In arguing that the State did not lay a proper foundation for admission of the blood test results, Martinez-Orta asserts that the State did not present evidence that Barnett acted under a protocol prepared by a physician when she drew his blood. He contends that, because Barnett could not recite the protocol on the stand at trial and testified that she did not have the protocol in front of her when she completed the blood draw, an insufficient foundation was presented, and State's Exhibit 8, the blood test results, should not have been admitted.[4]

[4] At oral argument, Martinez-Orta's counsel argued that State's Exhibit 4, which was the Standard of Work Sheet prepared by Barnett, was a protocol and was not prepared by a physician as required under Indiana Code section 9-30-6-6(a), and therefore, this document did not adhere to the statutory requirements, making the blood test results inadmissible. However, neither in the Appellant's Brief, nor at the trial court was it argued that State's Exhibit 4 was not compliant with the statute, so we therefore disregard counsel's argument.

[20] At trial, Barnett testified that she was a registered nurse at IU Health, that over her career, she had completed close to 200 "legal blood draws," which she referred to as blood draws where the police bring in "the patient . . . for a blood alcohol level," tr. vol. 2 p. 31, that IU Health maintains a protocol for a legal blood draw, which was prepared by a physician and admitted into evidence as State's Exhibit 2, and that she collected Martinez-Orta's blood pursuant to that protocol. Barnett's testimony was sufficient to lay an adequate foundation for admission of the evidence. Indeed, there was foundational evidence establishing that Barnett was a person trained in obtaining bodily substances, there was a hospital protocol that was prepared by a physician for legal blood draws, Barnett knew the protocol, and she followed the protocol when she obtained a blood sample from Martinez-Orta. Barnett also testified about the protocol for a legal blood draw and detailed how she obtained Martinez-Orta's blood, which included using betadine to clean the site, obtaining two tubes of blood using grey tubes, properly filling out the chain of custody forms, and handing the tubes to Trooper McKinney.

[21] Our court has previously found a sufficient foundation was laid for the admission of blood test results where a nurse testified that she was trained in legal blood draws, her hospital had a protocol for legal blood draws that was approved by a physician, and she followed the physician-approved protocol. *Martin*, 154 N.E.3d at 853. Additionally, in *Pedigo v. State*, 146 N.E.3d 1002 (Ind. Ct. App. 2020), *trans. denied*, this court found a sufficient foundation was laid where a phlebotomist testified that she followed a protocol approved by a

physician when drawing the defendant's blood and testified about the steps she took when collecting a blood sample for law enforcement; such evidence established that the phlebotomist was a person trained in obtaining bodily samples as required by Indiana Code section 9-30-6-6(a) and that she was "acting under the direction of or under a protocol prepared by a physician[.]" 146 N.E.3d at 1014 (citing I.C. § 9-30-6-6(a)).

[22]   Martinez-Orta contends that Barnett's testimony was unreliable because she could not articulate every step of the protocol verbatim in her testimony. This argument is an invitation to reweigh the evidence, which we will not do. *Bell*, 81 N.E.3d at 236. To the extent Martinez-Orta contends the testimony was insufficiently detailed, we note that Barnett was not required to recite the hospital protocol verbatim in her testimony, nor was she required to be viewing the protocol at the time she completed the blood draw. The statute and Indiana case law only require that blood samples collected at the request of a law enforcement officer be obtained by "[a] person trained in . . . obtaining bodily substance samples and acting under the direction of or under a protocol prepared by a physician[.]" I.C. § 9-30-6-6(a). Barnett's testimony was sufficient to lay the proper foundation for admission of the blood draw results. Thus, the trial court did not abuse its discretion when it admitted the blood test results.

## Conclusion

[23]   The trial court did not abuse its discretion in admitting the blood test results. The actions of Trooper McKinney during the traffic stop of Martinez-Orta did

not violate the Fourth Amendment, and the State laid a proper foundation for admission of the blood test results.

[24] Affirmed.

May, J. and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

Shay J. Hughes
Shay Hughes Law Office, LLC
Lafayette, Indiana

Michael D. Dean
Laura L. Blaydes
Lafayette, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy J. Bradley
Steven J. Hosler
Deputy Attorneys General
Indianapolis, Indiana